**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4103**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

JOEANN WHARTON,

                    Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Ellen L. Hollander, District Judge. (1:13-cr-00043-ELH-1)

Argued:  September 20, 2016            Decided:  October 21, 2016

Before WILKINSON, MOTZ, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Harris joined.

**ARGUED**: Julie L.B. Stelzig, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Paul Nitze, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF**: James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Judson T. Mihok, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Joeann Wharton appeals her convictions of conspiracy, making a false statement, theft, and embezzlement, all in connection with her unlawful receipt of government benefits. She principally contends that the district court should have suppressed evidence found at her house.[1] Wharton maintains that, in the affidavit supporting the search warrant for the house, the affiant recklessly omitted material, exculpatory facts. Because the inclusion of the omitted information would not have defeated probable cause for the search, that information was not material. Accordingly, we affirm the judgment of the district court.

---

[1] Wharton also contends that the superseding indictment did not provide her with adequate notice of the crimes charged and that the differences between the superseding indictment and the Government's proof at trial constituted a prejudicial variance requiring reversal. As the district court held, neither argument is persuasive. The superseding indictment, like that we held sufficient in United States v. Perry, 757 F.3d 166, 172 (4th Cir. 2014), tracked the statutory language and set forth specific details about the nature of the charges; for instance, the superseding indictment informed Wharton of the kind and source of the funds she assertedly embezzled and the time during which the alleged offenses took place. As for the divergence between the superseding indictment and the evidence at trial, the Government proved a narrower set of facts at trial than it alleged in the superseding indictment, but the superseding indictment alleged everything the Government proved at trial. There was no reversible error. See United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013).

I.

After their mother's death in 2002, Wharton's two granddaughters, Chaqueira Wharton and Essence Wharton, moved in with her. Wharton applied for, and received, Social Security survivors' benefits on their behalf, obligating her to spend those funds for their care. In July 2012, the Government learned that the girls were not receiving the benefits, and since 2009 had not even lived with Wharton in her house on Utrecht Road in Baltimore, Maryland. The Government then launched an investigation of Wharton's use of the survivors' benefits. Special Agent Mark Gray of the Social Security Administration's Office of the Inspector General headed that investigation.

As part of his investigation, Agent Gray reviewed state and federal records and interviewed Wharton's two granddaughters, Chaqueira Wharton and Essence Wharton, Wharton's children LaSean Wharton and Tasha Muriel, Wharton's husband John Wharton, and Wharton herself. Agent Gray's investigation uncovered other evidence of Wharton engaging in potentially fraudulent activity involving government benefits. On January 31, 2013, a federal grand jury indicted Wharton on two counts of theft of government property in violation of 18 U.S.C. § 641 and 42 U.S.C. § 1383a(a)(3).

Five months later, on June 27, 2013, the grand jury issued a sealed superseding indictment, which was unsealed on July 10, 2013. The superseding indictment charged both Joeann Wharton and her husband, John Wharton, with multiple counts involving conspiracy to embezzle, embezzlement, and making false statements to obtain government benefits. On July 1, 2013, while the superseding indictment remained sealed, Agent Gray sought a search warrant of the Utrecht Road house to obtain evidence about John Wharton. In the affidavit Agent Gray offered in support of the search warrant, he set forth substantial evidence of criminal activity by John Wharton and asserted that John Wharton and Joeann Wharton lived together at the Utrecht Road house. Upon consideration of the affidavit, a magistrate judge issued the search warrant. Agent Gray and another agent executed it the following day, uncovering a number of documents relevant to the charges against both John Wharton and Joeann Wharton.

Prior to trial, Joeann Wharton moved to suppress all the evidence obtained in that search. She argued that Agent Gray had recklessly omitted material exculpatory evidence from the affidavit, namely that John Wharton lived only in the basement of the house. The district court held a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to consider the question. After a two-day evidentiary hearing, and an

4

additional day of oral argument, the district court largely denied the suppression motion.[2]

A lengthy trial followed at which the district court admitted evidence obtained in the search of the common areas of the house. The jury convicted Joeann Wharton of Social Security fraud in violation of 42 U.S.C. § 1383a(a)(3), and convicted both Joeann Wharton and John Wharton of conspiracy to embezzle money from the United States in violation of 18 U.S.C. § 371, two counts of making false statements to the SSA in violation of 42 U.S.C. § 1383a(a)(2), and two counts of embezzlement from the United States in violation of 18 U.S.C. § 641.

## II.

The critical information that Joeann Wharton maintains Agent Gray recklessly omitted from his affidavit were facts demonstrating that she and her husband "occupied different parts

---

[2] The district court granted the motion with respect to Joeann Wharton's second floor bedroom and ordered that the documents found there would not be admitted into evidence at her trial. Although in its appellate brief, the Government contends that the district court erred in suppressing these documents, the Government acknowledges that in the district court it "did not challenge" that decision, and simply asks us to affirm the judgment of the district court. Brief of Appellee at 17, 26-31, and 55. Thus, the Government has waived any challenge to the order concerning Joeann Wharton's bedroom, and we do not discuss it further. We consider the adequacy of Agent Gray's affidavit only with respect to the remainder of the house and henceforth characterize that portion of the house as "the common areas."

of the house." Brief of Appellant at 23. She contends that the omission of these facts rendered Agent Gray's affidavit materially false in violation of the Fourth Amendment. See Maryland v. Garrison, 480 U.S. 79, 85 (1987) ("Plainly, if the officers had known . . . that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant.").

The Utrecht Road house occupies three levels: a basement; a main first floor; and an upstairs second floor. The second floor contains two bedrooms and a bathroom. The first floor consists of a kitchen, a living/dining area, and the front door to the house. The basement consists of a bedroom, a separate entrance, a half-bath, a refrigerator, and a microwave. An interior door connects the first floor to the basement.

For the most part, Agent Gray's ten-page, twenty-two paragraph affidavit seeking a warrant to search the Utrecht Road house for evidence of John Wharton's criminal activity outlines the nature of that activity. Agent Gray also made the following representations as to the living arrangement within the house: 1) he and another agent interviewed John Wharton and Joeann Wharton together at the Utrecht Road house; 2) at this interview, "the Whartons stated that they had been married continuously for 43 years, and that they lived together" in the

6

house; 3) the Baltimore Gas & Electric Company provides power to the entire house through an account in John Wharton's name; 4) the Dish Network provides television service to the entire house through an account listing both John Wharton and Joeann Wharton as authorized users; and 5) Agent Gray knew "from interviews in June 2013 with Lesean [sic] Wharton and his sister Tasha Muriel that John and Joeann are currently living" in the house. Joeann Wharton did not (and does not) challenge any of these facts. What she contends is that Agent Gray recklessly omitted from his affidavit other material information indicating that she and John occupied distinct areas of the house.

After considering the evidence the parties produced at the Franks hearing, the district court found that LaSean Wharton had told Agent Gray that his parents slept in separate bedrooms but shared a kitchen and common areas. The court found that Tasha Muriel had told Agent Gray that both of her parents lived in the Utrecht Road house, but John Wharton lived in the basement while Joeann Wharton occupied the upstairs floors. According to Muriel, although John Wharton would occasionally visit the kitchen and dining areas, he did so by invitation only, mostly at family gatherings. The district court further found that Wharton's granddaughters had told Agent Gray that they needed to knock on an interior door to the basement, which typically remained locked, on the rare occasions they went to their

7

grandfather's part of the house. Finally, the court found that some of Agent Gray's notes and the documents he obtained during his investigation indicated that Joeann Wharton lived separately from John Wharton in the house. The district court concluded that although Agent Gray recklessly omitted this information from his affidavit, because it was not material, its omission did not violate the Fourth Amendment.[3]

---

[3] In so holding, the court relied on the joint cable and utility bills, the fact that Agent Gray interviewed John Wharton and Joeann Wharton together in the Utrecht Road house, and their representations as to a long-standing marriage during that interview. The court also relied on two facts Agent Gray did not include in his affidavit but that Wharton's evidence at the Franks hearing established: (1) Tasha Muriel told Agent Gray that John Wharton would occasionally cook in the kitchen and had access to the dining room; and (2) LaSean Wharton told Agent Gray that John Wharton and Joeann Wharton shared a kitchen and common areas. On appeal, the parties strongly dispute whether the district court properly considered these two pieces of additional evidence in assessing the materiality of Agent Gray's omissions. We have held that "[i]n evaluating whether probable cause would have existed if the omitted statements had been included," a court must "only consider the information actually presented to the magistrate during the warrant application" by the Government. United States v. Lull, 824 F.3d 109, 119 n.3 (4th Cir. 2016) (internal quotation marks omitted). While Lull precludes a court from relying on extrinsic evidence the Government offers to bolster an affidavit facing a Franks challenge, it does not speak to whether a court can consider extrinsic evidence offered by a defendant. Given our holding, we need not resolve that question in this case.

III.

With these facts in mind, we turn to the legal question before us -- whether the district court erred in finding that the omissions in the affidavit were not material, and so denying Wharton's suppression motion. When considering a district court's ruling on a suppression motion, "we review factual findings for clear error and legal determinations de novo." United States v. Lewis, 606 F.3d 193, 197 (4th Cir. 2010). We "construe the evidence in the light most favorable to the prevailing party," here the Government, "and give due weight to inferences drawn from those facts by resident judges and law enforcement officers." Id. (internal quotation marks omitted).

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The district court properly recognized that Franks governs Wharton's challenge.[4] Defendants may bring Franks challenges both when an affidavit contains a false statement and

---

[4] Franks, and many of the cases applying it, involve defendants claiming that the district court improperly denied them an evidentiary hearing to test the integrity of the affidavit supporting a search warrant. Of course, because the district court granted Wharton a Franks hearing, and there is no challenge to that decision, we do not address that preliminary question here.

9

when the affiant has omitted material facts from the affidavit. United States v. Lull, 824 F.3d 109, 114 (4th Cir. 2016). To establish a Franks violation, a defendant must prove that the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit. Id. Thus, Franks requires proof of both intentionality and materiality. Id. We need only discuss the materiality requirement here.

An omission is material if it is "necessary to the [neutral and disinterested magistrate's] finding of probable cause." Franks, 438 U.S. at 156. Even if relevant, information is not material unless "its inclusion in the affidavit would defeat probable cause." See United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990).

In assessing materiality, we "insert the facts recklessly [or intentionally] omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. If the corrected warrant affidavit establishes probable cause," there is no Franks violation. Miller v. Prince George's Cty., 475 F.3d 621, 628 (4th Cir. 2007) (internal quotation marks and citations omitted). Therefore, for Wharton to succeed on her Franks challenge, she must demonstrate that the totality of both the facts Agent Gray provided in his affidavit and the facts that he omitted do not signal "a fair probability that . . .

10

evidence of [John Wharton's] crime w[ould] be found" in the common areas.  See Illinois v. Gates, 462 U.S. 213, 238 (1983) (defining the probable cause standard).

In Lull, we recently considered another Franks omission challenge.  We held that a law enforcement officer's reckless omission of facts from his affidavit, which undermined the reliability of a confidential informant, were material and required reversal of Lull's conviction.  824 F.3d at 118-20.  There, a police officer had executed a search warrant of Lull's house and, in doing so, found drugs and weapons the Government later used against him.  Id. at 113.  In his application for a search warrant, the officer swore that an undercover informant had advised him that "Lull was selling quantities of Cocaine, Marijuana and other illegal drugs from his home address," and that this informant "had recently bought illegal drugs from . . . Lull."  Id.  The officer did not disclose, however, that immediately after completing a controlled buy with Lull, the informant tried to steal some of the money police had given him to make the buy.  Id. at 112-13.  We held that this omission fundamentally undermined the informant's reliability, thereby invalidating the search warrant.  Id. at 111.

In assessing the materiality of that omission, we noted that the informant supplied much of the factual basis for the affidavit.  Id. at 118.  Because the confidential informant was

11

inherently unreliable, we excised his (otherwise-undisputed) statements from the affidavit. Id. Without the informant's statements, nothing in the affidavit "identifie[d] Lull specifically as the seller or otherwise connect[ed] him to the drug transaction." Id. at 119. Accordingly, we held the omission material. Id. at 120.

Similarly, in United States v. Tate, 524 F.3d 449, 451 (4th Cir. 2008), we held that a defendant should have received a Franks hearing when he offered evidence that an affiant police officer failed to disclose that he had trespassed in searching the defendant's trash to obtain evidence of criminal activity. We explained that the omission was material because "[i]f the trash investigation was conducted illegally, the facts derived from it would have to be stricken from the affidavit," and without those facts, "the affidavit would not have supported a finding of probable cause." Id. at 457.

In both Lull and Tate, correcting the affidavit to include the omitted information undermined the foundational core of the affidavit. Here, the inclusion of the omitted information does not do that. For in this case, the corrected affidavit still includes unchallenged information establishing probable cause.

Most critical is Agent Gray's uncontroverted account in his affidavit of his joint interview of John Wharton and Joeann Wharton at the Utrecht Road house. During that interview, John

12

and Joeann Wharton stated that they lived together at the house and had stayed continuously married for forty-three years.  This account alone easily demonstrates the requisite fair probability that a search of the common areas of the house would reveal evidence of John Wharton's crimes.

Moreover, two other pieces of evidence Agent Gray provided in his affidavit -- bills for shared cable and electric services -- buttress that conclusion.  A magistrate judge could conclude from John Wharton's monetary contributions to the television and power services for the entire house that he utilized those services.  Indeed, John Wharton's involvement with those accounts, particularly given the fact that the BGE account was in his name only, indicates continued interaction between John Wharton and Joeann Wharton, at least to the degree necessary to manage the utility accounts.  These inferences further support the view that John Wharton had access to the common areas of the house.

To be sure, the omitted information Agent Gray learned from his interviews with the Wharton children and grandchildren, and documents, some of which suggested two distinct units within the Utrecht Road house, is relevant to the question of the Whartons' living arrangements.  But, even considering those facts, the corrected affidavit still establishes probable cause to search all the common areas of the house.

Significantly, nothing in the omitted information demonstrated, or even suggested, that John Wharton lacked access to the common areas of the house. For example, LaSean Wharton had told Agent Gray that his parents maintained separate bedrooms; but LaSean never said that John Wharton remained exclusively downstairs or did not enter the common areas. Agent Gray's notes lend themselves to a similar inference; to the extent they imply a division of the house into two distinct units, this demonstrates only that John Wharton did not have access to Joeann Wharton's bedroom. And while the statements of Tasha Muriel, Chaqueira Wharton, and Essence Wharton all provide evidence of John Wharton's lack of access to Joeann Wharton's bedroom (at least to the best of their knowledge), nothing in those statements showed that John Wharton did not have access to the common areas of the house.

Additionally, unlike the officers in Lull and Tate, nothing Agent Gray omitted casts doubts on the inherent validity (whether through unreliability, illegality, etc.) of any information in the original affidavit. Certainly the omitted information provides more detail to the picture Agent Gray's affidavit painted. However, those omitted facts simply join the facts Agent Gray proffered to form the totality of the circumstances a magistrate judge would consider in assessing probable cause for the corrected affidavit. And given the

14

merely relevant nature of those additional facts, their omission does not constitute a <u>Franks</u> violation.

The only contemporaneous evidence in the corrected affidavit specific to John Wharton's access to the common areas of the house indicates that he did have access to those areas. And nothing Agent Gray omitted from his affidavit discredited that conclusion. We are satisfied that, even corrected, the affidavit provided the magistrate judge with "a substantial basis for . . . concluding that probable cause existed" that John Wharton would utilize public areas and leave in them evidence of his own criminal activity. <u>Gates</u>, 462 U.S. at 238-39 (alterations in original). Accordingly, the district court properly held that the omissions were not material and so did not defeat probable cause.

IV.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

15