**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-4671**

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

GARY OWEN JONES,

          Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, Chief District Judge. (3:18-cr-00023-GMG-RWT-1)

Argued: September 20, 2019                            Decided: November 6, 2019

Before NIEMEYER, KEENAN, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Rushing joined.

**ARGUED:** Aaron David Moss, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. Lara Kay Omps-Botteicher, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Kristen M. Leddy, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Gary Jones entered a conditional guilty plea to being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). On appeal, he challenges the denial of his motion to suppress various ammunition and ammunition components seized from his residence pursuant to a search warrant. The warrant, which authorized a search for evidence of "threats of terrorist acts" (terrorist threats) under W. Va. Code § 61-6-24, was based on a series of threats that Jones made online against members of law enforcement.

Jones argues that the search warrant was invalid for two reasons. First, he asserts that the warrant lacked probable cause on its face, because his statements did not constitute terrorist threats under West Virginia law, and because the affidavit submitted by police to obtain the warrant (the warrant affidavit) failed to establish the required nexus between his residence and the evidence sought. Second, Jones alternatively maintains that even if the warrant was facially valid, the magistrate's probable cause determination was undermined by the omission of several statements from the warrant affidavit. Jones claims that he made a substantial preliminary showing that these omissions were both intentional and material, and thus separately challenges the district court's denial of his request for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

Upon our review, we conclude that the search warrant was supported by probable cause, and that the alleged omissions in the warrant affidavit were immaterial to the magistrate's probable cause determination. We therefore affirm the district court's judgment.

2

I.

We recount the facts presented to the state magistrate who issued the challenged warrant. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 277 (4th Cir. 2004). Because the district court denied Jones' suppression motion, we state the evidence in the light most favorable to the government. *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

In July 2017, Martinsburg Police Corporal E.C. Neely arrested Jones for driving while his license was suspended. The next day, in statements made on Facebook, Jones announced that he was "on a cop manhunt" for Neely, and requested information from "anybody out there" regarding Neely's whereabouts.[1]

About six months later, Jones escalated his threat. In a series of four Facebook "posts" in January 2018, Jones declared that he was on a "manhunt" for three law enforcement officers, all of whom he identified by name. Jones asked for information regarding where the officers lived, stated his "need" to find them, and promised that he had "something" for them when he did. Addressing Officer Neely in particular, Jones wrote: "Eric Neely I feel sorry for you . . . when I find ya . . . I got something really interesting for you."

About six weeks later, in February 2018, Jones expanded his online threats to include all police officers, whom he collectively referred to as "pigs." Writing again on Facebook, Jones stated that no "pigs" should "come to my house at all" and that he was

---

[1] Jones' statements, as they appeared online, contained numerous spelling and formatting errors. For the sake of legibility, we set forth Jones' statements with those errors corrected.

3

"going to pull this trigger, bang, bye." He also explicitly warned: "If pigs come here here [sic] be careful."

Jones' rhetoric escalated still further the following day in response to an online article reporting a nightclub shooting involving local police. Commenting on the article in an online post, Jones lamented the fact that the officers responding to the scene had not "got shot," expressed his "hope" that "all cops" would "burn in hell," and stated that he would have tried to "whack the pigs" if he had been the shooter. In additional comments, Jones also admitted that he previously had vandalized a police officer's vehicle, and that he owned a .45-caliber handgun he had used to shoot a man at a "strip club" during a failed drug deal.

Three days after Jones made the above online post, law enforcement officers conducted surveillance of Jones' residence based on the totality of his online behavior. The officers later obtained a warrant to search his home for evidence of terrorist threats, in violation of W. Va. Code § 61-6-24. Upon executing the warrant, officers found hundreds of rounds of ammunition and ammunition components.

Jones was indicted in federal court for possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g). He filed a suppression motion arguing that the search warrant facially lacked probable cause, and that the warrant affidavit failed to contain certain material information. The district court denied Jones' motion, holding that his online statements established probable cause for the search warrant. The court also held that Jones failed to make a preliminary showing that material facts had been intentionally omitted from the warrant affidavit, and therefore denied Jones' request for a hearing

4

pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Jones entered a conditional guilty plea to the Section 922(g) offense, preserving his right to file the present appeal.

## II.

As noted above, Jones contends that the search warrant was facially insufficient to establish probable cause for two reasons: (1) his statements did not qualify as terrorist threats under West Virginia law; and (2) the warrant affidavit failed to establish the required nexus between his residence and evidence of that crime. We consider these arguments in turn.

## A.

We review de novo the district court's determination that the warrant was facially valid, using the same standard employed by the district court. *United States v. Lyles*, 910 F.3d 787, 791-92 (4th Cir. 2018); *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). When examining a warrant application, a judicial officer must make a "common-sense" determination whether the application shows a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We afford that probable cause determination "great deference," and ask only whether the judicial officer had a "substantial basis" for finding probable cause. *Id.* at 236-38 (citations omitted).

The warrant in the present case authorized officers to search Jones' residence for evidence of violations of W. Va. Code § 61-6-24, which provides in relevant part that "[a]ny person who knowingly and willfully threatens to commit a terrorist act, with or

5

without the intent to commit the act, is guilty of a felony." The statute defines the term "terrorist act" to include any act "[l]ikely to result in serious bodily injury or damage to property or the environment," provided that the act is intended to:

(i)  Intimidate or coerce the civilian population;

(ii)  Influence the policy of a branch or level of government by intimidation or coercion;

(iii)  Affect the conduct of a branch or level of government by intimidation or coercion; or

(iv)  Retaliate against a branch or level of government for a policy or conduct of the government.

W. Va. Code § 61-6-24(a)(3)(A)-(B).

Here, over the course of a dozen individual online posts, Jones declared that he was on a "manhunt" for three different officers. He actively sought information regarding the officers' locations and warned all "pigs" to "be careful" if they came near his home. Jones also stated that he owned a .45-caliber handgun, boasted that he had used the handgun to shoot a man in the past, and asserted that he would have tried to "whack the pigs" if he had been the shooter referenced in an online article. Finally, the warrant affidavit established that Jones' threats began immediately after Corporal Neely made the initial traffic stop and arrested Jones. Under these circumstances, we hold that there was a substantial basis to conclude that Jones had threatened acts "[l]ikely to result in serious bodily injury" that were intended to "[r]etaliate against a branch or level of government for . . . conduct of the government." W. Va. Code § 61-6-24(a)(3)(A)-(B).

Our review of West Virginia precedent confirms this conclusion. In particular, we observe that the Supreme Court of Appeals of West Virginia (the West Virginia court) has

6

held that a school custodian's threat to "get a gun and start taking people out" if he was required to do more work, coupled with queries to another custodian regarding "what kind of handgun was the best," was sufficient to sustain an indictment under the terrorist threats statute. *State ex rel. State v. Wilson*, 806 S.E.2d 458, 460, 464 (W. Va. 2017). In its holding, the West Virginia court distinguished its earlier decision in *State v. Yocum*, in which it held that a threat made against a single police officer, uttered by a person "under arrest, handcuffed, and in the patrol car," was insufficient to sustain a conviction under the statute. *See Wilson*, 806 S.E.2d at 463 (quoting *State v. Yocum*, 759 S.E.2d 182, 190 (W. Va. 2014)). Drawing this distinction, the West Virginia court emphasized in *Wilson* that the custodian's threat was made to "unspecified others," not to a single officer. *Id.*

In the present case, Jones made threats against police officers generally, as well as individualized threats against certain named officers. *Cf. id.* at 463-64. And, unlike the defendant in *Yocum*, Jones was not in custody or otherwise detained when he made those threats. *Cf. Yocum*, 759 S.E.2d at 190. Under these circumstances, we hold that Jones' threats fall within the scope of W. Va. Code § 61-6-24, as that statute has been interpreted by the West Virginia court.

We also hold that the warrant affidavit established a "fair probability" that evidence of Jones' terrorist threats would be found at his residence. *Gates*, 462 U.S. at 238. At the outset, we observe that Jones' threats expressly included a warning that "pigs" should not "come to my house at all." This statement suggests that Jones may have planned to carry out one or more of his threats from his home, and therefore provides some direct evidence linking his crime to his residence. Moreover, we long have held that an affidavit need not

7

directly link the evidence sought with the place to be searched. *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). Instead, the nexus requirement also "may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Id*.

Here, for example, the magistrate reasonably could have inferred that Jones had made his online threats from a computer located at his home. *See United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010) (holding that it was reasonable to infer that computer used to distribute child pornography was at defendant's home). The magistrate likewise was entitled to draw an inference that other relevant evidence, including the .45-caliber handgun that Jones had referenced in one of his online statements, would be stored at his residence. *Anderson*, 851 F.2d at 729 (holding that it is reasonable to assume individuals keep their weapons in their homes). Finally, the affiant established through law enforcement surveillance that the address specified in the warrant application was Jones' residence. *Cf. United States v. Lull*, 824 F.3d 109, 119-20 (4th Cir. 2016).

We conclude that the above evidence and reasonable inferences that could be drawn from the evidence were sufficient to establish the required nexus with Jones' residence for the purpose of establishing probable cause.[2] Accordingly, we hold that the warrant

---

[2] We also reject Jones' argument that the evidence sought in the warrant exceeded the scope of the West Virginia statute, which governs terrorist *threats*, not terrorist *acts*. The magistrate's decision to authorize a search for the instrumentalities Jones might use to carry out his threats was plainly reasonable. At a minimum, physical evidence indicating a plan or ability to commit a terrorist act could be used to show that Jones, in fact, intended his statements as threats of future violent acts. Thus, we hold that the evidence sought by the warrant was well within the scope of W. Va. Code § 61-6-24.

8

affidavit provided the magistrate with a substantial basis to conclude that Jones made terrorist threats within the meaning of W. Va. Code § 61-6-24, and that evidence of this crime would be found in his home.

B.

We next consider whether the district court erred in denying Jones' request for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Jones contends that the affiant intentionally omitted from the warrant affidavit two of Jones' online statements, which would have undermined the magistrate's probable cause determination. We disagree with Jones' argument.

We assess the legal determination underlying the district court's *Franks* ruling de novo, and we review the court's factual findings for clear error. *Allen*, 631 F.3d at 171. To establish entitlement to a *Franks* hearing based on information omitted from the warrant affidavit, Jones was required to make a "substantial preliminary showing" that the omissions were intentional or reckless, and that the omitted information was material to the magistrate's probable cause determination. *Franks*, 438 U.S. at 155-56; *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016). For the omitted statements to be deemed material, their inclusion must defeat probable cause. *Wharton*, 840 F.3d at 168-69.

We assess materiality using a simple test. We insert the omitted facts into the warrant affidavit and, examining the information contained within the "revised" affidavit, evaluate whether there nevertheless would have been probable cause to issue the warrant. *Id.* If the revised affidavit still establishes probable cause, the defendant is not entitled to a *Franks* hearing. *Allen*, 631 F.3d at 171-72.

9

Jones identifies two statements omitted from the warrant affidavit that he asserts entitled him to a *Franks* hearing. Both statements were made on his Facebook page on the same day that he warned "pigs" to "be careful" if they came near his home and stated that he was "going to pull this trigger, bang, bye." In the first omitted post, Jones stated that he hoped that a person named Dallas Adams was "burning in hell." In the second omitted statement, which was made about 45 minutes later, Jones wrote that he was "[g]etting ready to pull this big trigger bang bang." Jones argues that these statements, when understood in context, demonstrated that he was contemplating suicide at the time he made them. Jones accordingly argues that the two omitted statements would have defeated the magistrate's probable cause determination by undermining the significance of the post he made later that day, in which he wrote that he was "going to pull this trigger, bang, bye."

We disagree with Jones' contention that the omitted statements were material to the magistrate's probable cause determination. At the outset, we observe that Jones' suggestion that the magistrate necessarily would have understood his omitted statements to reflect suicidal ideation is implausible on its face. To the contrary, in the context of the other clear threats that Jones made against the police that same day, we agree with the district court that Jones' reference to "[g]etting ready to pull this big trigger" more likely would have bolstered the magistrate's finding of probable cause, and that the post regarding Dallas Adams simply was irrelevant.

Moreover, even under Jones' reading of these omitted statements, his *Franks* claim still fails. The warrant affidavit contained evidence of eleven other threatening online posts made by Jones that were unrelated to the omitted statements that Jones has identified.

10

These posts included Jones' multiple declarations that he was on a "manhunt" for police officers, his repeated efforts to ascertain where individual officers could be found, his express warnings that "pigs" should stay away from his house, and his open admission to owning a firearm that he previously had used to injure another person during a drug transaction. Thus, even if the affidavit were revised to include the omitted statements, that revised affidavit would have established probable cause to search Jones' residence. *See Wharton*, 840 F.3d at 168-69. Accordingly, we hold that Jones has failed to demonstrate that the omitted statements were material to the magistrate's probable cause determination and that, therefore, the district court did not err in denying Jones' request for a *Franks* hearing. *See Allen*, 631 F.3d at 171-72

III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*