**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4751**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DON LAMONT WILKERSON,

Defendant - Appellant.

**No. 18-4752**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DON LAMONT WILKERSON,

Defendant - Appellant.

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. David A. Faber, Senior District Judge. (2:09-cr-00076-1; 2:16-cr-00218-1)

Submitted: March 20, 2020                    Decided: April 9, 2020

Before THACKER and HARRIS, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Thacker and Judge Hudson joined.

———————

Barry P. Beck, POWER, BECK & MATZUREFF, Martinsburg, West Virginia, for Appellant. Michael B. Stuart, United States Attorney, Andrew J. Tessman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Don Lamont Wilkerson was convicted of three counts of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and sentenced to 240 months' imprisonment. Because Wilkerson was serving a three-year term of supervised release at the time of these offenses, the district court also revoked his supervised release and imposed a consecutive sentence of 24 months' imprisonment, for a total sentence of 264 months. Wilkerson timely appealed his convictions and sentence on the methamphetamine charges, as well as the revocation of his supervised release and resulting revocation sentence, and this court consolidated the appeals.

Counsel for Wilkerson has filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there are no meritorious grounds for appeal but presenting three questions for review: (1) whether the district court erroneously denied Wilkerson's motion to suppress evidence; (2) whether sufficient evidence supported Wilkerson's convictions; and (3) whether the district court imposed a reasonable sentence. We ordered supplemental briefing on the motion to suppress, and we now affirm in full.

**I.**

**A.**

What Wilkerson sought to suppress before the district court was evidence obtained in three controlled buys in September of 2016, when he sold methamphetamine to a customer who turned out to be a confidential informant. But because Wilkerson's

3

argument was that the controlled-buy evidence was tainted by three prior – and allegedly unlawful – searches, we begin by describing those searches in some detail.

The searches that are the predicate for Wilkerson's suppression motion occurred in May of 2016. A few weeks earlier, on April 20, 2016, Detective Keven Allen, with the Metropolitan Drug Enforcement Network Team ("MDENT"), received a tip from a neighborhood watch group about "suspicious activity" at a residential address in Charleston, West Virginia. J.A. 78. Allen drove by the address, observed several "high-end vehicles," ran the plates, and found two registered to a Donna Wilkerson. *Id.* A records check revealed that Donna Wilkerson had a son named Don L. Wilkerson, who Allen recalled had previously been convicted of a federal drug offense.

Over the next two weeks, Allen conducted three separate trash pulls – searches of the garbage left outside the residence, the validity of which has not been disputed – which revealed the following evidence: mail addressed to Don L. Wilkerson at the home in question; a birth certificate for Don L. Wilkerson, and a storage-unit application and pay stubs in the name of Don L. Wilkerson; small amounts of marijuana; and evidence (in the form of loose tobacco, "blunt" wrapper packages, and plastic bags with the corners cut off) that the officer recognized, based on his training and experience, as associated with the use and distribution of marijuana. Allen then ran a criminal history report on Don L. Wilkerson – henceforth, "Wilkerson" – and uncovered several prior drug and gun charges, including a 2010 conviction for distribution of oxycodone for which Wilkerson was then on supervised release.

4

With all that information in hand, Detective Allen applied for a warrant to search the residence, including the foregoing facts as probable cause to believe Wilkerson was residing there and in possession of marijuana with intent to deliver. A county magistrate issued the warrant, and Allen and other MDENT officers executed it on May 5, 2016. Their search recovered partially smoked marijuana roaches, mechanical hand scales that Allen noted were "commonly used in the weighing of drugs for distribution," J.A. 119, and $4,361 in cash from Wilkerson's pockets. There also were three sets of car keys in the house – one of which had a storage-unit key on its keychain – and three vehicles parked out front. In two of the vehicles, Allen observed marijuana remnants through the closed windows, and a K-9 dog alerted to the presence of narcotics in the third. Allen also asked an officer with a K-9 to go to the storage facility and conduct a free air sniff, at which point the K-9 alerted to the presence of drugs at the door of unit 166 (but at no other nearby units). And the storage-unit key located during the search of Wilkerson's home fit the lock on that unit, though no entry was made before a warrant was acquired.

Based on the facts contained in the first warrant application, plus the additional information gleaned during the execution of that warrant, Allen then applied for and received warrants to search the vehicles in front of the home and the storage unit in Wilkerson's name. Searches of the vehicles yielded a small amount of marijuana, and the search of the storage unit yielded mail and legal documents addressed to Wilkerson, digital scales, and what later tested to be 260.9 grams of methamphetamine. An arrest warrant for Wilkerson issued in August of 2016 but was not immediately executed.

Several weeks later, a confidential informant entered the picture, approaching MDENT and telling officers about buying large quantities of methamphetamine from an individual he knew as "Dub." J.A. 96. Based on the confidential informant's description of Dub's residence and car, the police suspected that Dub was an alias for Wilkerson. In September of 2016 – now four months after the original searches – officers used the confidential informant to make three controlled buys of methamphetamine from Dub, who did indeed turn out to be Wilkerson. Immediately following the third controlled buy, the officers arrested Wilkerson on a federal supervised release revocation warrant, rather than on the arrest warrant they had obtained in August of 2016.

**B.**

Wilkerson was indicted on three counts of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) based on the controlled buys. Before trial, he moved to suppress the evidence obtained in the September 2016 controlled buys, arguing principally that it was the fruit of unlawful May 2016 searches of his home, vehicles, and storage unit. According to Wilkerson, were it not for the evidence obtained through the allegedly unconstitutional May 2016 searches, the police would not have pursued the later controlled buys after talking with the confidential informant. The government defended the May 2016 with-warrant searches – characterizing the defendant's position on those searches as "wholly without merit" – but argued primarily that even if those searches had violated the Fourth Amendment, the evidence obtained from the September 2016 controlled buys would be admissible because it was sufficiently attenuated from any earlier illegality. J.A. 145.

6

The district court denied the suppression motion. It assumed, only for the sake of argument, that the May 2016 searches violated the Fourth Amendment, "despite the fact that warrants were acquired before each search." J.A. 427. Even so, the court reasoned, the evidence from the controlled buys was admissible under the attenuation doctrine, in light of the lengthy time between the May searches and the September controlled buys and the intervention of the confidential informant who "approached law enforcement of his own free will – independent from and unaware of the May 2016 searches." J.A. 431. And the district court considered and rejected Wilkerson's claim that the May 2016 searches constituted the kind of flagrant police misconduct that would justify suppression, finding no indicia of bad faith or gross negligence.

Wilkerson proceeded to a three-day jury trial on the methamphetamine distribution charges. At trial, the government called law enforcement witnesses, who testified as to the procedure for the controlled buys and authenticated and described the seized drugs; called the confidential informant, who testified that he made the three controlled purchases of methamphetamine from Wilkerson under law enforcement supervision; and introduced the seized drugs, along with expert testimony as to their quantity and purity. Wilkerson testified on his own behalf, denying that he sold methamphetamine and claiming that what he sold the confidential informant during the controlled buys was marijuana. The defense moved for a judgment of acquittal at the close of the government's case and again at the conclusion of all evidence, but the district court denied both motions, finding that there was sufficient evidence for a reasonable jury to reach a guilty verdict. The jury convicted Wilkerson on all three counts.

7

The district court then held a hearing to sentence Wilkerson and to consider the government's pending petition for the revocation of Wilkerson's supervised release. Wilkerson's advisory Guidelines range was 240 to 262 months' imprisonment for two of his counts of conviction, based on a 20-year statutory mandatory minimum, and 210 to 262 months for the remaining count. The court sentenced Wilkerson at the bottom of that range, to three 240-month sentences to run concurrently. Next, the court determined that Wilkerson had violated the terms of his supervised release by committing new criminal conduct and revoked his supervised release. For this violation, Wilkerson's advisory sentencing range was 18 to 24 months' imprisonment, and the court sentenced Wilkerson to 24 months, to run consecutive to the sentence on the methamphetamine charges.

Wilkerson timely appealed. Counsel for Wilkerson submitted an *Anders* brief, stating that there are no meritorious grounds for appeal but questioning whether the district court erroneously denied Wilkerson's motion to suppress evidence, whether sufficient evidence supported Wilkerson's convictions, and whether the district court imposed a reasonable sentence. This court then ordered supplemental briefing on the suppression issue, and Wilkerson's counsel and the government submitted briefs in response.

## II.

### A.

We turn first to the denial of Wilkerson's motion to suppress. When considering a district court's denial of a suppression motion, we review its legal conclusions de novo, and we may affirm on any ground supported by the record, whether or not it is the basis

8

for the district court's decision. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005). For the reasons that follow, we find no error and affirm.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To deter violations of that right, the exclusionary rule directs courts to exclude evidence from a criminal trial if it was obtained in violation of the Fourth Amendment. Importantly, that rule extends beyond evidence that is the direct result of an illegal search or seizure to "evidence later discovered and found to be derivative of an illegality" – the so-called "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). There is, however, a limit: "[W]here there is sufficient attenuation between the unlawful search and the acquisition of evidence, the 'taint' of that unlawful search is purged," and the evidence need not be suppressed. *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012).

Here, the district court assumed without deciding that the May 2016 searches violated the Fourth Amendment, despite the fact that they were conducted pursuant to warrants, and instead focused on the question of attenuation. And, as explained above, the court determined that the purported fruit of the May 2016 searches – evidence obtained from the September 2016 controlled buys – was sufficiently attenuated from those searches that suppression would be inappropriate even if the searches were unconstitutional. While we have no reason to question the district court's careful application of the attenuation doctrine, we may affirm its decision on a more fundamental ground: Because the May 2016 searches were conducted pursuant to warrants supported by probable cause, there is

9

no underlying Fourth Amendment violation, and hence no need for an attenuation analysis at all.  *See United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (en banc) (explaining "if the arrest was supported by probable cause, we need not address the issue of attenuation").  Without a poisonous tree, in other words, there can be no tainted fruit to suppress.

Our analysis therefore begins, and ends, with the threshold question of whether the May 2016 searches were constitutionally infirm.  Before searching a home – or a vehicle or storage unit, as the case may be – the government generally must obtain a warrant supported by probable cause, as the officers did here.  *See Fernandez v. California*, 571 U.S. 292, 298 (2014); U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause . . . .").  Whether probable cause for a search exists is a "practical, common-sense" question, asking whether, under a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause is "not a high bar," *Kaley v. United States*, 571 U.S. 320, 338 (2014), "requir[ing] only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243 n.13.  And here, we are not writing on a blank slate.  Instead, we are mindful that a magistrate issued these warrants based on probable cause determinations.  We afford such determinations "great deference," asking only "whether the judicial officer had a 'substantial basis' for finding probable cause." *United States v. Jones*, 942 F.3d 634, 638 (4th Cir. 2019) (quoting *Gates*, 462 U.S. at 236–38).

The three warrants here meet this standard. As outlined above, the first warrant application contained the following information: Detective Allen received a tip about suspicious activity at a particular residence; his lawful investigation of that tip revealed that an individual known to have been convicted of a drug offense likely was at the residence in question; and further investigation yielded drugs and drug-related items from the residence's trash that, based on Allen's training and experience, signified the sale or distribution of marijuana. Taken together, those facts provide a substantial basis to find probable cause supporting the first warrant. Based on the evidence of marijuana distribution discovered in the trash pull, the information linking that evidence to Wilkerson and his residence, and the knowledge of Wilkerson's criminal history, the magistrate properly concluded that there was a "fair probability" that additional criminal evidence would be discovered upon execution of the first warrant. *Gates*, 462 U.S. at 238.

As it turns out, additional evidence *was* discovered, and Allen then included that evidence in the subsequent warrant applications. Each of those subsequent warrant applications – for the vehicles and storage unit, respectively – contained the information included in the first, plus the additional information gathered during the search of Wilkerson's home. In the vehicle warrant application, Allen explained that the search of Wilkerson's home yielded three sets of car keys, that there were three vehicles parked out front, that Allen observed marijuana remnants through the closed windows of two of those vehicles, and that a K-9 dog alerted to the presence of narcotics in the third. And in the storage-unit warrant application, Allen stated that he had discovered a storage-unit agreement during one of the trash pulls, that officers had recovered a storage-unit key

11

during the home search, that a K-9 alerted to the presence of narcotics at the door of that storage unit, and that the key fit into the lock of that storage unit. Under the totality of the circumstances, a magistrate reviewing those facts readily could infer that both the vehicles and the storage unit likely contained further evidence of possession of marijuana with intent to deliver.

It is important to note that although this case began with an uncorroborated tip, the probable cause showing did not end there. *Cf. United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996) (no probable cause where affidavit "depended [solely] on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability"). The Supreme Court has recognized, in "applying the totality-of-the-circumstances" probable cause analysis, "the value of corroboration of details of an informant's tip by independent police work." *Gates*, 462 U.S. at 241. Here, Allen did just that, following up on the general tip he received by conducting an independent investigation – the validity of which is not questioned – that turned up concrete evidence of potential criminal activity. Nor is this a case in which the police relied solely on a suspect's criminal history, *cf. Smith v. Munday*, 848 F.3d 248, 254 (4th Cir. 2017) (no probable cause where only information officers had about arrestee was that she had a criminal record and shared the same name as the suspect), or a single trash pull yielding "a scintilla of marijuana residue or hint of marijuana use," *cf. United States v. Lyles*, 910 F.3d 787, 792 (4th Cir. 2018). Here, the initial warrant application contained all of that, but also more, including evidence of drugs and drug-related items consistent with marijuana distribution from three separate trash pulls. And the subsequent warrant applications, of

12

course, also included the additional evidence uncovered in the execution of the first. Based on the totality of the circumstances and with the deference due the judicial officer who issued the warrants, we find a substantial basis for the magistrate's determination that there was a probability or substantial chance that the authorized searches would uncover evidence of marijuana distribution.[*]

**B.**

We now briefly address the remaining questions raised by counsel's *Anders* brief. We agree with the district court that sufficient evidence supports the jury's verdict, and we also conclude that Wilkerson's sentence is reasonable.

On sufficiency of evidence, we review the denial of a motion for judgment of acquittal de novo, determining whether there is substantial evidence to support the conviction when viewed in the light most favorable to the government. *See United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez-Soriano*, 931 F.3d 281, 286 (4th Cir. 2019) (internal quotation marks and alteration omitted). "A

---

[*] We do not think this question is particularly close. But we note that even if any of the warrant affidavits did fall short of showing probable cause, the evidence still would be admissible under *Leon* because the officers "act[ed] in objectively reasonable reliance" on the warrants. *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). None of these affidavits can be said to have been "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and there is no indication that the affidavits contained information "that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citation and internal quotation marks omitted).

defendant who brings a sufficiency challenge bears a heavy burden, as appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *Savage*, 885 F.3d at 219 (internal quotation marks omitted).

Here, substantial evidence supports Wilkerson's convictions. At trial, the government presented evidence of three controlled purchases of methamphetamine based on audio and video recordings of each transaction, the phone calls arranging each transaction, and testimony from the confidential informant, as well as evidence about the quantity and purity of the seized drugs. Though Wilkerson testified that he actually sold marijuana, not methamphetamine, to the confidential informant, a reasonable jury could have declined to credit his testimony – particularly in light of the overwhelming evidence to the contrary set forth by the government.

Nor do we detect any error as to the reasonableness of Wilkerson's sentence for his methamphetamine convictions and the revocation of his supervised release. We review the reasonableness of a sentence under 18 U.S.C. § 3553(a) using a deferential abuse-of-discretion standard, regardless of "whether [the sentence is] inside, just outside, or significantly outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 41 (2007). First, we evaluate procedural reasonableness, considering whether the district court properly calculated the defendant's advisory Guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) sentencing factors, and sufficiently explained the selected sentence. *See id.* at 51. If we determine that the district court has not committed procedural error, only then do we proceed to assess the substantive reasonableness of the sentence, "tak[ing] into account the

14

totality of the circumstances." *Id.* And "[a]ny sentence that is within or below a properly calculated Guidelines range is presumptively reasonable." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014) (citation omitted).

Our review of the record reveals no significant procedural or substantive errors. The district court allowed the parties to present arguments, gave Wilkerson the opportunity to allocute, considered the 18 U.S.C. § 3553(a) sentencing factors, and explained the selected sentences. On substantive reasonableness, we note that in light of the relevant 20-year statutory minimum, Wilkerson's 240-month concurrent sentences for his methamphetamine convictions were the lowest legally available to the district court. And in any event, Wilkerson fails to rebut the presumption that his within-Guidelines-range sentences – for both his methamphetamine convictions and the revocation of his supervised release – are substantively reasonable. *See Louthian*, 756 F.3d at 306.

**III.**

In accordance with *Anders*, we have reviewed the entire record in this case and have found no meritorious issues for appeal. We therefore affirm Wilkerson's convictions and sentence. This court requires that counsel inform Wilkerson, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client. We dispense with oral

15

argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*