**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4273

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CRAIG LEON PULLEY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, Chief District Judge. (2:18-cr-00131-MSD-LRL-2)

Argued: October 30, 2020                    Decided: February 10, 2021

Before NIEMEYER and KEENAN, Circuit Judges, and Richard E. MYERS II, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Chief Judge Myers wrote the majority opinion, in which Judge Niemeyer joined. Judge Keenan wrote a dissenting opinion.

**ARGUED:** Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Amanda C. Conner, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Sherrie S.

Capotosto, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

MYERS, Chief District Judge:

Craig Leon Pulley appeals his conviction entered pursuant to a conditional guilty plea to possession with intent to distribute a quantity of hydrocodone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). In accordance with the parties' agreement, Pulley asserts on appeal that after conducting a two-day hearing pursuant to *Franks v. Delaware*, the district court erred in denying his motion to suppress evidence that was seized pursuant to warrants authorizing searches of his residence, automobile, and mobile device in connection with a July 29, 2017, robbery. Pulley argues that one statement tending to establish probable cause and three omissions from the affidavit supporting the application for the search warrants were false and/or misleading and, thus, the warrants issued were invalid. For the reasons that follow, we affirm the district court.

I.

Four similar, armed robberies of independent pharmacies in Norfolk, Virginia, occurred over the span of eighteen months from April 2016 to October 2017. The robberies shared the same modus operandi, including that an armed robber entered the pharmacy with white trash bags and directed the victim/clerk on duty to fill the bags with certain prescription narcotics. While the first three robberies involved only one man physically entering the pharmacy, Detective C. J. Howard (hereinafter "Detective Howard" or "affiant") always suspected a second individual was involved, possibly serving as the getaway driver. Two armed individuals entered the pharmacy to carry out the fourth robbery. The investigation into these four robberies eventually led Norfolk police to Defendant Craig Leon Pulley (hereinafter "Pulley").

3

After the third robbery but before the fourth took place, a confidential informant (hereinafter "CI") positively identified Darryl Blunt (hereinafter "Blunt") as a suspect in both the second and third robberies and mentioned that at least one other person was present when the CI retrieved narcotics from Blunt. The CI did not name Pulley; he identified the person as Blunt's cousin, who went by the nickname "Cuz," and who was twice charged with murder but never convicted. Further investigation showed that Blunt and Pulley are not related, but grew up together and were like family. Pulley had been charged with murder prior to the instant offenses.

Detective Howard obtained Blunt's cell phone records and GPS location data, which confirmed Blunt's presence in the vicinity of the pharmacy in question for both the second and third robberies. Cell phone data also confirmed that Blunt received a short, incoming phone call during the third robbery from a phone number associated with Pulley. This was significant because the victim of the third robbery overheard the robber answer his cell phone during the course of the robbery and say to the caller, "we're good in here," J.A. 419,[*] suggesting that he was speaking with an accomplice.

The day after the fourth robbery, which took place on October 12, 2017, Norfolk police secured and executed search and arrest warrants related to Blunt. Certain items retrieved pursuant to these warrants confirmed Blunt's involvement in the robberies, including a large amount of prescription narcotics in bottles with markings consistent with

---

[*] Citations to the "J.A." refer to the contents of the joint appendix filed by the parties in this appeal.

4

a description provided by the fourth victim, a magazine with ammunition in it, and clothing considered to be identical to clothing worn during the fourth robbery. When Blunt was first interrogated by police, he adamantly denied his involvement in the robberies and only admitted to selling pharmaceuticals. The investigative team, and Detective Howard in particular, did not believe this to be true.

While in his holding cell, Blunt hid a distinctive, purple gun (of the same caliber as the ammunition and magazine retrieved pursuant to the search warrant and likely used during the fourth robbery) behind the toilet. When police confronted Blunt about the gun upon its discovery several days later, Blunt denied knowledge of it, despite video footage. Detective Benshoff was assigned the task of listening to phone calls made by Blunt while he was in police custody. During one such call, Blunt told a friend that he threw out some clothes that were going to be important and that he needed those items retrieved and set aside. Detective Howard later included those statements in an investigative file, but testified that she was unaware of that detail when she drafted her search-warrant affidavit.

Police eventually interrogated Blunt a second time. During this conversation, Blunt implicated Pulley in all four robberies and told detectives that Blunt could lead them to the location where *Pulley* stashed clothes worn during the fourth and final robbery. Before drafting and obtaining various search warrants related to Pulley, Detective Howard was informed by a colleague that Pulley was in jail during the time the two 2016 robberies took place. At the time she heard this, Detective Howard had serious doubts about the information's accuracy and nevertheless still believed Pulley was involved in the robberies.

Detective Howard applied for and obtained several search warrants related to

5

Pulley. The affidavit in support of the various warrants stated that co-suspect and defendant Blunt "has provided information found to be credible by detectives." J.A. 53. The affidavit did not indicate that it was Blunt who disposed of clothing worn during the robberies, not Pulley, that Pulley was believed by one officer to be incarcerated during the two 2016 robberies, or that Blunt denied knowledge of the distinctive, purple gun found in his holding cell.

Pulley was federally indicted in August 2018 for possession with intent to distribute several varieties of controlled substances. Following the denial of Pulley's motion to suppress after a two-day hearing pursuant to *Franks v. Delaware*, he entered a conditional guilty plea to possession with intent to distribute a quantity of hydrocodone in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), preserving his right to appeal the denial of the motion. Pulley timely appealed his conviction.

## II.

## A.

In reviewing the denial of a motion to suppress, "we review legal conclusions de novo and factual findings for clear error." *United States v. Seerden*, 916 F.3d 360, 365 (4th Cir. 2019) (citation omitted). "In doing so, we consider the evidence in the light most favorable to the Government." *Id.* This court must also "give due weight to inferences drawn from those facts by resident judges and law enforcement officers." *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016) (internal quotation marks and citation omitted).

"When reviewing factual findings for clear error, we particularly defer to a district court's credibility determinations, for it is the role of the district court to observe witnesses

6

and weigh their credibility during a pre-trial motion to suppress." *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016) (internal quotation marks, brackets, and citation omitted). Thus a "court reviewing for clear error may not reverse a lower court's finding of fact simply because it would have decided the case differently. Rather, a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012) (internal quotation marks, brackets, and citation omitted).

In this regard, "[a]n accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit" by way of a motion to suppress. *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). In its decision in *Franks v. Delaware*, 438 U.S. 154 (1978), however, the Supreme Court "carved out a narrow exception to this rule, whereby an accused is entitled to an evidentiary hearing on the veracity of statements in the affidavit." *Allen*, 631 F.3d at 171. Under *Franks*, a defendant is entitled to suppression of evidence seized if, during the evidentiary hearing, "perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 156. Defendants also may bring *Franks* challenges when the affiant has omitted material facts from the affidavit. *Wharton*, 840 F.3d at 168. "To establish a *Franks* violation, a defendant must prove that the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit." *Id. Franks* thus has two distinct prongs, "requir[ing] proof of both intentionality and materiality." *Id.*

7

B.

We address the legal standards that apply to the *Franks* intentionality prong. On appeal, Pulley does not challenge the district court's finding that the affiant neither made false statements nor omitted information from her affidavit with the intent to mislead the state magistrate who issued the search warrants. To establish the intentionality prong under *Franks*, then, Pulley must prove that the affiant here made misrepresentations in or omitted information from the affidavit "with reckless disregard of whether it would make the affidavit misleading." *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016). The defendant's burden in demonstrating intentionality in the context of an omission is high "because an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Id.* (internal quotation marks, brackets, and citation omitted). Importantly, the Supreme Court has stressed that because of the presumption of validity with respect to a search-warrant affidavit, conclusory allegations of a defect are insufficient, and defendants must offer proof by a preponderance of intentional or reckless falsehood to prevail. *Franks*, 438 U.S. at 155-56, 171. "Allegations of negligence or innocent mistake are insufficient." *Id.* at 171.

This court has stated previously that reckless disregard in the *Franks* context requires a showing that the affiant personally recognized the risk of making the affidavit misleading. *See Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (discussing *Franks* analysis in the context of a 42 U.S.C. § 1983 suit). What the officer-affiant *should* have known does not matter if he did not *in fact* know. Reckless disregard is a subjective inquiry; it is not negligence nor even gross negligence. To establish a *Franks*

violation, the particular affiant must have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk.

In line with the unanimous view of our sister circuits, we now make explicit what was implicit in *Lull*: we review such a finding for clear error. *See United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011) (holding that a district court's resolution of whether a false statement in a warrant affidavit was made with reckless disregard is subject to reversal only upon a finding of clear error and citing cases from the First, Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits for the same); *see also Lull*, 824 F.3d at 120 (Davis, J., concurring in part and dissenting in part) ("I concur in the majority opinion's holding that the district court clearly erred in finding that Investigator Welch did not intentionally or recklessly omit from the warrant affidavit the circumstances surrounding the informant's attempt to steal twenty dollars from the funds provided by the Sheriff's Office to make the controlled buy."). As the *Brown* court cogently explained,

> [f]irst, ascertaining the existence of "serious doubts" is likely to turn in substantial part on observations of the demeanor during the *Franks* hearing of (*inter alia*) the allegedly reckless officer himself. The trial judge is better positioned than the judges on an appellate panel to evaluate an officer's honesty when he testifies, "No, Your Honor, I didn't entertain serious doubts about the accuracy of that statement I made under oath." Similarly, what is obvious in a given case will frequently depend on background circumstances and facts about the community, of which a trial judge is more apt to be aware than an appellate panel. Recklessness determinations are also likely to be highly fact-dependent, and thus to carry little precedential value: decisions will typically turn on what a particular officer did and either knew or should have known. Review of such determinations does not warrant substantial expenditure of

9

> appellate resources, because the answers to the questions presented will not be of much use in future cases with different fact patterns. The overarching goals of judicial administration thus favor affording deference to the trial court's findings.

*Brown*, 631 F.3d at 645. We hold that a district court's finding of whether a particular false statement or omission in a warrant affidavit was made intentionally or with reckless disregard for the truth is a factual one, subject to reversal only upon an appellate finding of clear error.

Because we find no clear error in the district court's factual findings regarding the *Franks* intentionality prong, we reject Pulley's challenges and need not reach the materiality prong. For the same reason, we also need not reach Pulley's *Lull*-premised contention that all of the co-suspect's statements should be removed from the affidavit and that the affidavit, so altered, is insufficient to establish probable cause.

## III.

We turn to the particular factual findings in this case. Pulley challenges one "false" statement and three omissions made by Detective Howard, the investigating-officer affiant. The alleged false statement included in the warrant application is that co-suspect and defendant Blunt "has provided information found to be credible by detectives." J.A. 53. The omissions are: (1) that it was Blunt who discarded clothing worn during the robberies; (2) that a different investigator believed Pulley to be incarcerated during two of the four pharmacy robberies in which he was suspected of participating in 2016 (this ultimately turned out to be false); and (3) that a distinctive, purple gun likely used in the fourth robbery was concealed by Blunt in his holding cell (confirmed by video footage) and when law

10

enforcement officers confronted him, Blunt denied knowledge of it. Blunt's credibility mattered because Blunt was the person providing detectives with most of the incriminating evidence against Pulley.

The district court concluded,

> [w]hen looking at intentionality, it's an easy conclusion for me on whether there was anything deliberate. I thought that Detective Howard testified credibly. I watched her carefully through hours of testimony and I did not find her to be in any way seeking to mislead the court. I found that she made admissions that did not necessarily . . . redound favorably upon her in all respects. And so I found her completely credible. . . . I don't think she intentionally tried to leave anything out.

J.A. 652. While true that the district court only explicitly discussed recklessness in the narrow context of one of the enumerated omissions, Pulley has failed to demonstrate why it was clear error for the court to conclude that Detective Howard was not in "any way seeking to mislead," J.A. 652, which, as we explain above, is required to prove reckless disregard in the *Franks* context. The district court's finding was based on credibility determinations to which we defer, *Palmer*, 820 F.3d at 653, and this court is not "left with the definite and firm conviction that a mistake has been committed," *Wooden*, 693 F.3d at 451 (internal quotations and citation omitted).

## A.

We consider the district court's findings in turn. That Blunt—described in the affidavit as being "charged with the listed robberies committed on April 12, 2016, October 22, 2016, and July 29, 2017" and "one of the suspects of this crime [October 12, 2017]"— "provided information found to be credible by detectives," J.A. 51, 53, is not, as Pulley

11

argues, synonymous with a blanket statement that Blunt is a completely credible and truthful person. Unlike search-warrant applications based on information provided by unidentified CIs, applications based on information provided by cooperating witnesses need not rely on the witnesses' credibility when police independently corroborate the information. For information provided by CIs, affiants must provide indicia of reliability and credibility to bolster the fact that the information is provided by an unidentified person. This requirement did not apply here when the information provided by the co-defendant was independently corroborated. Although Pulley argues that the court's determination was clearly erroneous because the co-suspect was unreliable, not credible, and told law enforcement "many lies" that were not detailed in the affidavit, his argument misstates the affiant's averment. Contrary to Pulley's suggestion, the affiant did not aver the suspect was credible in all matters. Further, a defendant must show both objective falsity and subjective intent of the affiant through concrete evidence. A "defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are *objectively false*." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (emphasis added), *cert. denied*, 140 S. Ct. 823 (2020). Pulley has failed to demonstrate the existence of any evidence showing the affiant's averment that Blunt provided information found to be credible was an objectively false statement. The district court did not commit clear error in finding no false statement had been made.

## B.

Next, Pulley argues that the affiant's averment that the co-suspect stated that Pulley

12

had discarded clothing misled the magistrate because the affidavit omitted the fact that at least one other investigative officer had heard a recording suggesting the information was not true. Although Pulley acknowledges that the affiant insisted in her hearing testimony she did not learn until after Pulley's arrest that co-suspect Blunt had identified himself in a recorded jail conversation as the person who discarded the clothes, Pulley asserts her averment was reckless because information about who threw away the clothes was known by another detective and could be imputed to her under the collective knowledge doctrine.

We do not agree. First, the collective knowledge doctrine applies in a different context, "when at least some, but not all, of an investigative team has actual knowledge of facts necessary to a finding of probable cause. The knowledge is imputed from one officer to another such that the officers collectively are assumed to have actual knowledge of the imputed fact." *United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011) (internal citation omitted). As was the case for the defendant in *Blauvelt*, Pulley's argument here "goes too far." *Id.* This court "ha[s] not applied th[e] doctrine to impute knowledge of facts to an officer seeking a warrant merely because such facts are accessible to the law enforcement community at large." *Id.* And Pulley does not suggest any plausible reason why the co-suspect's statement heard by another detective should be imputed to the affiant. The *Franks* inquiry is designed to identify intentionality or reckless disregard on the part of the affiant. An officer who does not personally know information cannot intentionally or recklessly omit it, and therefore the collective knowledge doctrine cannot apply in the *Franks* context.

Second, the district court credited the affiant's testimony that she did not learn the co-suspect had identified himself as the person who discarded the clothes until after

13

Pulley's arrest, and Pulley does not point to evidence tending to suggest or show that this testimony was objectively false or that the affiant recounted Blunt's statements to her with disregard as to whether that statement would mislead the magistrate. Importantly, the affiant testified repeatedly that the identity of the person who discarded the clothes did not matter to her; instead, what mattered was that clothes were retrieved, determined to be similar to clothes worn by the robbers, and could be tested for DNA. The district court did not clearly err in its finding.

C.

Pulley also challenges the omission from the affidavit of the affiant's purported knowledge of Pulley's custody status during the commission of robberies in 2016. We conclude that the district court did not err in finding that Pulley has not established reckless disregard by the affiant. As this court has recognized, warrant affidavits "are normally drafted by nonlawyers . . . [and t]hey must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor judged as an entry in an essay contest." *Moody*, 931 F.3d at 372 (internal quotation marks and citations omitted). Here, although the affiant learned of another detective's belief that Pulley was incarcerated in 2016—during the commission of two robberies sharing a modus operandi with the July 29, 2017, robbery—she testified that she entertained serious doubts about the accuracy of this information and that, nevertheless, she still believed Pulley was involved, whether in person or from jail. Detective Howard attested, "I trusted what he was giving me. But it didn't make sense to me. . . . I couldn't quite put my finger on it. But it didn't add up to what I was looking at. . . . didn't add up to

14

what I was looking at in reference to the MO and all of the information I had, combined with the phone data . . . and the CI's information and everything." J.A. 527-28. She further testified that it was her ordinary practice in composing an affidavit supporting a search warrant to include information that was credible based on corroboration. On appeal, Pulley does not point to any evidence tending to suggest or show that the affiant did not act in accordance with her ordinary practice in this case, and the affiant did not testify to having obtained or having been aware of evidence corroborating the correctness of the report about Pulley's custody status prior to composing the affidavit. Given this, Pulley has failed to show reckless disregard for the truth by the affiant. Furthermore, the information regarding Pulley's custodial status provided to Detective Howard by her colleague was eventually determined to be false. Detective Howard's misgivings regarding its veracity were in fact correct. Including the false information would have made the affidavit misleading, rather than more accurate. There was no clear error by the district court.

D.

Finally, Pulley argues that the affiant acted with reckless disregard in omitting from the affidavit information he claims bears directly on the co-suspect's credibility and reliability, namely, that the co-suspect denied involvement in the robberies and denied possessing a distinctive firearm likely used in the fourth robbery, despite it having been found in his holding cell. Detective Howard testified that it is common for suspects to minimize their role in a suspected offense or deny involvement altogether upon their initial interactions with law enforcement; therefore, not much credence was given to Blunt's denial of involvement. She also testified that she did not believe Blunt's deception

15

regarding the distinctive, purple gun had any bearing on her application for a search warrant pertaining to Pulley. She testified, "certainly nothing was intentionally or otherwise left out that I thought had relevancy. That's just the bottom line." J.A. 536. After a two-day hearing, the district court expressly credited Detective Howard's testimony that the robbery co-suspect provided information that was found to be credible based on it having been corroborated. We find that there was no clear error committed by the district court. Because we uphold the finding below that there was no *Franks* violation at the intentionality prong, we do not reach Pulley's arguments based on the materiality prong and *Lull*.

## IV.

For the reasons stated, we affirm the criminal judgment.

*AFFIRMED*

16

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

I respectfully dissent. I would hold that the district court conducted an incomplete analysis under *Franks v. Delaware*, 438 U.S. 154 (1978), and that our holding in *United States v. Lull*, 824 F.3d 109 (4th Cir. 2016), requires reversal of the district court's decision denying the motion to suppress.

To establish a *Franks* violation, a defendant must establish both intentionality and materiality regarding the information at issue. *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016). Thus, as the majority explains, the defendant must show by a preponderance of the evidence (1) that the law enforcement affiant made a false statement or omitted essential information either intentionally or with a reckless disregard for the truth, and (2) that the false statement or omitted information was material in that it was necessary to the magistrate judge's determination of probable cause. *Lull,* 824 F.3d at 114-15.

Intentionality and materiality are separate inquiries under *Franks*, although they often involve overlapping facts. *Id.* The district court's intentionality determination is reviewed for clear error, *see* Maj. Op. at 9; *United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011), while the materiality conclusion is subject to de novo review, *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003) (observing that "[t]he issue of materiality may be characterized as a mixed question of law and fact, or as a pure question of law" (citation omitted)); *United States v. Ippolito*, 774 F.2d 1482, 1484 (9th Cir. 1985) (materiality presents a mixed question of law and fact reviewed de novo).

Here, in examining the intentionality prong of *Franks*, I focus on the component of "reckless disregard" and would hold that the record compels a conclusion that Detective Howard omitted certain information from her affidavit with reckless disregard for whether those omissions rendered the affidavit misleading. The district court conducted its reckless disregard analysis with respect to only a single omitted fact, namely, that Detective Howard had received information from another officer that Pulley was incarcerated during two of the four robberies under investigation. It is apparent from the record, however, that the district court failed to address whether Detective Howard acted with reckless disregard in omitting two other critical facts from the warrant affidavit.

Notably, the district court never considered in its reckless disregard analysis Detective Howard's exclusion from the affidavit the following information: (1) that Detective Howard had concluded Blunt lied to the police in denying any personal involvement in the robberies; and (2) that Blunt was observed on a jail video recording hiding a purple gun, which resembled a gun used during one of the robberies, and later lied about having done so. Detective Howard's omission of the above information was particularly significant because she framed the affidavit in terms of Blunt being a credible source of information, stating that he was "one of the suspects of this crime who has provided information found to be credible by detectives." In my view, the district court's failure to consider these two omissions in evaluating the intentionality prong of *Franks* with respect to reckless disregard was clear error, and the majority cannot avoid the consequences of such error by simply reciting the standard of review for factual findings that were never made.

18

Crucially, Blunt was the only person who implicated Pulley in the robberies. Detective Howard omitted the above information, which would have undermined a finding that Blunt was a credible informant, while at the same time presenting Blunt in the affidavit as a credible source of information about the robberies. This act of sanitizing the affidavit prevented the magistrate judge from properly evaluating whether Detective Howard's affidavit met the requirement of probable cause. Thus, we are presented with the same concerns we confronted in *Lull* and held were fatal to the affidavit in that case.

In *Lull*, an informant was directed by law enforcement to execute a controlled purchase of narcotics and was provided funds for that purpose. 824 F.3d 111-12. Instead of using all the money to purchase the drugs, the informant retained $20 of the "buy" money and later denied that he had done so. *Id*. at 112. In an affidavit seeking a warrant to search the defendant's home, the officer omitted the facts about the informant's retention of $20 and his act of lying about it. *Id.* at 113.

In this context, we explained that a Fourth Amendment violation occurs when an affiant excludes material information with reckless disregard for whether the omitted material rendered the affidavit misleading. *Id.* at 115; *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Although courts do not expect an affiant "to include in an affidavit every piece of information gathered in the course of an investigation," *Colkley,* 899 F.2d at 300, an affidavit must include adequate information for a magistrate judge to make an "independent evaluation" whether the issuance of a search warrant is supported by probable cause, *Franks*, 438 U.S. at 165; *see also Lull*, 824 F.3d at 116. An affiant acts with reckless disregard when she omits material facts that a "reasonable person would have

19

known [are] the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)); *see also Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007).

Here, the affidavit drawn by Detective Howard either succeeded or failed in establishing probable cause based on Blunt's credibility as an informant. The only information in the affidavit from sources other than Blunt was: (1) that Blunt had received a phone call in the vicinity of, and around the time of, one of the robberies from a phone registered to "Craig Pulley;" whom Blunt had described as his "close friend," and (2) that the robber captured on a video recording at the scene of that robbery had said on a phone call that "we're good in here." As the district court itself observed, those facts standing alone would have been insufficient to establish probable cause.

Instead of addressing whether Detective Howard acted with reckless disregard in excluding from the affidavit (1) her conclusion that Blunt was lying in denying any participation in the robberies, and (2) her knowledge that Blunt had hidden a gun likely used in one of the robberies, and had lied about having done so, the district court merely stated that Detective Howard's testimony at the *Franks* hearing was "completely credible," and that the court did not think "she intentionally tried to leave anything out." However, the fact that an affiant has given credible testimony at a *Franks* hearing does not answer the question whether she acted recklessly in omitting information that bore on the issue of her informant's credibility. We plainly rejected a similar analysis in *Lull*.

There, we held that the omitted facts about the informant's retention of some of the "buy" money and his act of lying about it showed, at least, that the officer acted with

20

reckless disregard for whether the omissions rendered the contents of the affidavit misleading. *Lull*, 824 F.3d at 116-17. We explained that because the informant's truthfulness directly impacted the content of the affidavit, "the relevance of this information should have been obvious to [the investigator]." *Id.* at 117. We reached this conclusion despite the trial court's acceptance as credible the investigator's testimony that he did not think that the omission had any bearing on whether drugs were being sold at the defendant's house. *See id.* at 116. Thus, as our decision in *Lull* makes clear, a finding that an officer gave credible testimony at a suppression hearing does not end the reckless disregard inquiry in the officer's favor when the officer knew that the informant was untruthful about the "very transaction" discussed in the affidavit. *Id.*

Like the informant in *Lull*, Blunt lied about the "very transaction" that was the subject of the warrant affidavit. *Id.* Most particularly, Blunt lied about his role in the robberies, and about his secretion of the purple gun likely used in one of the robberies. Necessarily, any reasonable person would have known that the omitted information of Blunt's untruthfulness "was the kind of thing the [magistrate] judge would wish to know" in evaluating the strength of the affidavit. *Wilson*, 212 F.3d at 788 (quoting *Jacobs*, 986 F.2d at 1235). Thus, I cannot escape the conclusion that the district court committed clear error in its "reckless disregard" analysis.

Turning to the materiality prong of *Franks*, I observe that the district court found that the omitted information about the purple gun was not material to the probable cause inquiry and indicated that the other omitted information also was not material. I disagree with the district court's analysis.

21

Appellate courts are charged with reviewing an affidavit as a whole under the "totality of the circumstances." *Lull*, 824 F.3d at 118 (citation omitted); *Colkley*, 899 F.2d at 301-02 (citation omitted). Considering the affidavit as a whole, I conclude that the omissions were material as a matter of law because they necessarily would have affected the magistrate judge's probable cause determination. *See Franks*, 438 U.S. at 156; *Lull*, 824 F.3d at 118; *Colkley*, 899 F.2d at 301. As noted above, there was little in the affidavit that did not come directly from the mouth of Blunt. And the magistrate judge was not provided the then-known information that Blunt was a serial liar who had misrepresented key aspects of the "very transaction" that was the subject of the affidavit. *Lull*, 824 F.3d at 116. When, as here, a judicial officer's determination of probable cause is so closely tied to the veracity of an informant, the judicial officer cannot assess probable cause without knowledge of facts greatly impairing the informant's veracity and reliability, concerns that are "critical to the totality of the circumstances test." *Id.* at 118. "[D]eeming the informant reliable for some purposes but unreliable for others is an assessment that is for the magistrate [judge], not [the affiant], to make." *Id.* at 116. Accordingly, as required by our holding in *Lull*, I conclude that both the intentionality prong with respect to reckless disregard and the materiality prong of the *Franks* analysis must be resolved in Pulley's favor.

Finally, because Pulley satisfied both prongs of the *Franks* analysis, I would set aside the information provided by Blunt and consider only whether the remaining information in the affidavit supported a finding of probable cause. *Id.* at 118. Upon doing so, I agree with the district court's alternative holding that, in the absence of the information

22

provided by Blunt, the affidavit said little and failed to establish probable cause for the issuance of a search warrant. Accordingly, I would hold that the district court erred in denying the suppression motion, and I would vacate the district court's judgment and remand the case for further proceedings.