**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-4576**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

TERRELL ANDERSON,

        Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Irene M. Keeley, Senior District Judge.  (1:20−cr−00033−IMK−MJA−1)

───────────────

Submitted:  October 5, 2022                    Decided:  January 4, 2023

───────────────

Before RUSHING and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ON BRIEF:** L. Richard Walker, First Assistant Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia; Zoey Vilasuso, Law Student Intern, United States Supreme Court Litigation Clinic, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.  William Ihlenfeld, United States Attorney, David J. Perri, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In response to a disturbance at a local motel, Bridgeport West Virginia Police Department ("BPD") officers searched and ultimately arrested Terrell Anderson, who was later convicted of one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Anderson appeals the district court's denial of his motion to suppress evidence seized during his encounter with the officers, including thousands of dollars of cash and his cell phone. He argues that the officers detained him without evidence that he had committed or was committing a crime. We hold that the officers had reasonable suspicion of criminal activity when they detained Anderson, and that the district court properly denied his motion to suppress. Accordingly, we affirm the district court's judgment.

I.

On January 4, 2020, BPD received a 911 call about a disturbance at a local motel. Samantha Hoover, the caller, reported that her friend, Anderson, was banging on Hoover's motel door and that Hoover wanted him to leave. After receiving this information from dispatch, Officer Aaron Lantz went to the motel and found Anderson in the parking lot. Officer Lantz asked Anderson, who appeared visibly agitated, "what was going on." Anderson responded that he wanted his belongings from Hoover's car, but that Hoover refused to unlock it. Anderson thought that, with the officer's assistance, he would be able to get his items from the car and leave.

2

Officer Cameron Turner arrived at the motel a few minutes after Officer Lantz. When Officer Turner arrived, Anderson was yelling and cursing in the parking lot. Officer Lantz asked Officer Turner to speak with Anderson while Officer Lantz talked to Hoover. Officer Turner guided Anderson, who was still visibly upset, away from Hoover's motel door. Anderson then repeatedly asked Officer Turner if Anderson could approach Hoover's car. Officer Turner denied each of Anderson's requests and ordered Anderson to stay near him. Anderson complied.

Other uniformed officers also responded to Hoover's 911 call. During the officers' investigation, Anderson threatened to break Hoover's car window, and told Hoover that he would "see [her] at the house." After Hoover arrived at the parking lot and opened her car door, the officers smelled marijuana. The officers received from Hoover consent to search her car and observed a marijuana paraphernalia device. During the officers' interview with Hoover, she told the officers that Anderson had sold her and her family members marijuana. The officers also interviewed a minor girl who had spent the night in Anderson's motel room and who was holding marijuana that Anderson had given her. Finally, the officers found about $3,120 in cash in Anderson's sock. Although none of the officers physically restrained Anderson, each testified that Anderson was not free to leave during any part of the encounter.

After the officers completed their investigation, the officers arrested Anderson for possession with intent to deliver marijuana. During the search incident to arrest, the officers seized Anderson's cell phone. Later, BPD officers searched Anderson's cell phone and found sexually explicit photographs and videos of the minor girl who had spent the

3

night in Anderson's motel room. On August 5, 2020, a grand jury returned a one-count indictment against Anderson for possession of child pornography.

Anderson moved to suppress evidence of the cash and evidence from the officers' later search of his cell phone, arguing in relevant part that the officers lacked reasonable articulable suspicion to detain him. The district court denied Anderson's motion.[1] The court concluded that Anderson consented to part of the initial interaction with the officers, and that the officers had reasonable suspicion that criminal activity was afoot. The court also found that the prolonged investigative detention was supported by the officers' reasonable suspicion. After a jury found Anderson guilty, the district court sentenced him to 60 months' imprisonment. Anderson appealed the court's denial of his motion to suppress.

## II.

On appeal, Anderson argues that the district court erred in denying his motion to suppress the cash seized and the evidence from his phone because the officers lacked reasonable suspicion to detain him. We disagree.

---

[1] The district court referred Anderson's motion to suppress to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The magistrate judge held a suppression hearing and issued a report and recommendation (R&R), recommending that the district court deny Anderson's motion. Anderson objected to the R&R. Following briefing on Anderson's objection, the district court adopted the R&R, overruled Anderson's objections, and denied his motion to suppress.

4

In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the district court's legal conclusions de novo, including the court's determination of whether reasonable suspicion existed. *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021); *United States v. McCoy*, 513 F.3d 405, 410 (4th Cir. 2008). We construe the evidence in the light most favorable to the prevailing party before the district court, here, the government, and give weight to permissible inferences drawn by the law enforcement officers. *United States v. Mitchell*, 963 F.3d 385, 390 (4th Cir. 2020); *Pulley*, 987 F.3d at 376. We will not reverse a lower court's factual findings "simply because [we] would have decided the case differently." *Pulley*, 987 F.3d at 376. Rather, we consider "whether, on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012)).

Anderson contends that the officers detained him without reasonable suspicion of criminal activity, and argues that the district court did not identify any criminal activity that was occurring or had occurred before his detention. The government counters that the officers' initial interaction with Anderson was consensual, and that Anderson was not detained until Officer Turner told Anderson to sit on the walkway of the motel. The government also argues that, even if the officers detained Anderson at the beginning of the encounter, the officers had reasonable suspicion that criminal activity was occurring or had occurred based on Anderson's loud behavior and "potential for domestic violence." We agree with the government that the officers did not immediately detain Anderson, and conclude that Officer Turner detained Anderson at the point that he prevented Anderson

5

from approaching Hoover's car. We nevertheless hold that the detention was lawful because Officer Turner had reasonable suspicion that Anderson was engaging in criminal activity when Officer Turner detained him.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure occurs when an officer uses physical force or a show of authority to restrain or terminate an individual's freedom of movement through means intentionally applied. *Brendlin v. California*, 551 U.S. 249, 254 (2007); *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989). If an officer "do[es] not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence," we consider whether "in view of all [of] the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Black*, 707 F.3d 531, 537 & n.3 (4th Cir. 2013) (alteration in original) (first quoting *United States v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989) and then quoting *Brendlin*, 551 U.S. at 255).

When an individual is detained pursuant to a *Terry*[2] stop, the detention is lawful if the officer has a "particularized and objective basis for suspecting the particular person stopped of criminal activity," based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Black*, 707 F.3d at 539 (first quoting *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009) and then quoting *Terry*, 392 U.S. at 21). Reasonable suspicion requires less proof than a

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

6

preponderance of the evidence and is a less demanding standard than probable cause. *United States v. Gist-Davis*, 41 F.4th 259, 264 (4th Cir. 2022). We consider an officer's determination that reasonable suspicion exists by evaluating the totality of the circumstances, and "give due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004).

Here, Anderson was not immediately detained when the officers arrived. When Officer Lantz arrived at the motel, he parked in the middle of the parking lot, got out of his car, and asked Anderson "what was going on." Anderson responded and explained that he wanted to get his belongings from Hoover's car. During this initial interaction, Officer Lantz did not tell Anderson he was not free to leave, nor did Officer Lantz demonstrate an intent to restrain Anderson through physical force or show of authority. Although Officer Lantz arrived in his police car and was in uniform, the remaining evidence before us demonstrates that this initial encounter was consensual. *See United States v. Jones*, 678 F.3d 293, 302 (4th Cir. 2012).

Nonetheless, some encounters with police "that start out as constitutional may . . . at some unspecified point, cross the line and become an unconstitutional seizure." *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 462 (4th Cir. 2013) (omission and alteration in original) (quoting *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002)). In this case, the consensual encounter became a seizure when Officer Turner denied Anderson's requests to walk away from the officer to go to Hoover's car. Officer Turner told Anderson that he had to stay with him, and Anderson complied. *See id.* (finding that

7

"the consensual encounter became a Fourth Amendment seizure when [the deputy sheriff] gestured for [the defendant] to remain seated" and the defendant complied).

We hold, however, that this seizure was lawful. Officer Turner had encountered a "disturbance in progress" at a motel where "an irate male [had been] banging on the doors and windows trying to get in." Officer Turner also knew that the female guest in that motel room, later identified as Hoover, wanted the irate male, Anderson, to leave. When Officer Turner arrived at the motel, Anderson was in the parking lot and "was extremely upset," "was yelling [and] cursing," and "would[ not] listen to commands." Because Anderson "was visibly upset towards" Hoover, Officer Turner guided Anderson away from Hoover's door and later, in response to Anderson's requests to move toward Hoover's car, ordered Anderson to stay near him instead. Based on the information Officer Turner received before he got to the motel and the behavior he observed when he arrived, he was justified in concluding that Anderson had committed or may have been committing the crime of disorderly conduct. *See* W. Va. Code § 61-6-1b(a) (outlining criminal penalties for anyone who "in a . . . public parking area, . . . disturbs the peace of others by . . . profane, indecent or boisterous conduct or language").[3]

---

[3] Anderson argues that, as a motel guest, he could lawfully "stand outside the door of a [m]otel room in an agitated state." But Officer Turner found Anderson in the parking lot of the motel. Regardless of whether the motel parking lot constitutes a "public parking area" within the meaning of West Virginia's disorderly conduct statute, *see* W. Va. Code § 61-6-1b(b)(3), it was objectively reasonable for Officer Turner to determine that Anderson, who was swearing and yelling in the motel parking lot about a nearby guest who had called 911 to report Anderson's behavior, was subject to and was violating that law. *See Heien v. North Carolina*, 574 U.S. 54, 61, 66 (2014) (holding that an objectively reasonable mistake of law can justify an investigatory stop).

In addition, after Anderson's initial detention, the officers found other evidence that raised suspicion of criminal activity and, thus, supported Anderson's continued detention. Anderson made statements about "see[ing Hoover] at the house" and breaking Hoover's car window, which the officers perceived as threats. And the officers smelled marijuana inside Hoover's car. After receiving Hoover's consent to search her car, the officers found marijuana paraphernalia and learned from Hoover that Anderson had sold marijuana to Hoover and her family members.

Meanwhile, other officers had interviewed the minor girl. The minor told the officers that she was fifteen, that she had spent the night with Anderson, that Anderson had asked her to hold and to hide a bag of his marijuana, and that Anderson sold marijuana. Because the officers had particularized information that Anderson had engaged in criminal activity, namely, possession with intent to distribute marijuana and contributing to the delinquency of a minor, the prolonged detention of Anderson was lawful. *See United States v. Branch*, 537 F.3d 328, 338 (4th Cir. 2008).

Based on the totality of these circumstances, we hold that Officer Turner had reasonable suspicion of criminal activity to justify Anderson's initial detention, and that the officers did not exceed the permissible scope of the stop.

## III.

For these reasons, we affirm the district court's denial of Anderson's motion to suppress. We dispense with oral argument because the facts and legal contentions are

9

adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*