**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-4282**

───────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

RONALD DENNIS GORDON, JR.,

        Defendant – Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:21-cr-00276-MSN-1)

───────────

Argued:  January 26, 2023                        Decided:  March 10, 2023

───────────

Before DIAZ and THACKER, Circuit Judges, and Catherine C. EAGLES, United States District Judge for the Middle District of North Carolina, sitting by designation.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ARGUED:**  Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Alexander Edward Blanchard, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Valencia D. Roberts, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Aidan Taft Grano-Mickelsen, Assistant United States Attorney, Richmond, Virginia, Colin Norton, Special

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The appellant, Ronald Dennis Gordon, Jr., filed a motion to suppress a firearm seized from an inventory search of his car after he was arrested for driving while impaired. Following an evidentiary hearing, the district court denied the motion. Mr. Gordon pled guilty to possession of a firearm by a felon, reserving his right to appeal that denial. Because the record supports the district court's findings that the officer had reasonable suspicion that Mr. Gordon was driving while impaired and that the inventory search was lawful, we affirm.

I

The evidence at the suppression hearing and found by the district court showed the following facts. At around 1:00 a.m. on August 15, 2021, Officer Weston from the Marine Corps Police at Quantico saw a car parked outside the base on a public street.[1] JA 88–90. Officer Weston had driven by this location less than an hour beforehand and had not seen the car then. JA 91. All the windows of the car were down, the driver's side front tire was blown out, and the tire rim was damaged. JA 91–92, 121, 172. The driver, later identified as Mr. Gordon, JA 89, was asleep or passed out in the driver's seat with his arm outside the window; he was shirtless, shoeless, and disheveled. JA 92, 95–96.

---

[1] The car was within the concurrent jurisdiction of Quantico and Prince William County, Virginia. JA 129, 148, 173.

3

Officer Weston made multiple attempts to wake Mr. Gordon before he eventually woke up. JA 94–95. He was disoriented and had slurred speech and glassy red eyes. JA 95, 173.

Officer Weston told Mr. Gordon to get out of the car. JA 96. Mr. Gordon struggled to maintain his balance and used the car for stability. JA 98. Officer Weston conducted field sobriety tests, concluded that Mr. Gordon was impaired, and arrested him for driving under the influence. JA 99–105.

Per the Marine Corps' impoundment policy, Lieutenant Cliff began an inventory search of the vehicle. JA 135–36. He found a firearm sticking out of the rear pocket of the passenger seat. JA 136, 141; *see* JA 68.

## II

On appeal, Mr. Gordon contends his conviction should be vacated for two independent reasons. First, he argues that Officer Weston did not have reasonable suspicion to conduct an investigatory stop at the point he ordered Mr. Gordon out of the car. Second, he argues that the inventory search was unlawful because it was unnecessary to impound the car and the Marine Corps' written policy did not apply to cars parked outside the base.

## A

When reviewing the denial of a motion to suppress, the Court construes "the evidence in the light most favorable to the Government." *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (cleaned up). We review the district court's legal conclusions de novo and factual findings for clear error. *Id.*

An officer may conduct an investigatory stop when he "has reasonable, articulable suspicion that criminal activity may be afoot." *United States v. Gist-Davis*, 41 F.4th 259, 263 (4th Cir. 2022) (cleaned up). Reasonable suspicion is "considerably less than a preponderance of the evidence," *id.* at 264 (cleaned up), and "is a less demanding standard than probable cause." *Id.* "While the government is not required to rule out the possibility of innocent conduct to meet the reasonable suspicion standard, it must articulate some particularized and objective basis for suspecting illegality." *United States v. Feliciana*, 974 F.3d 519, 524 (4th Cir. 2020) (cleaned up). An "inchoate and unparticularized suspicion or hunch" is not enough. *United States v. Miller*, 54 F.4th 219, 228 (4th Cir. 2022) (cleaned up). Courts should consider "the totality of the circumstances" and give "due weight to common sense judgments reached by officers in light of their experience and training." *Gist-Davis*, 41 F.4th at 264 (cleaned up).

Here, the seizure occurred when Mr. Gordon complied with Officer Weston's order to step out of the car. *See Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (noting an officer can seize a suspect by "a show of authority that in some way restrains the liberty of the person" (cleaned up)); *Brendlin v. California*, 551 U.S. 249, 254 (2007) (noting "there is no seizure without actual submission"); *see* JA 96–98, 128.

The evidence at the suppression hearing supports the district court's conclusion that there was reasonable suspicion. It is undisputed that Mr. Gordon's car was damaged and had been driven within the last hour; that Mr. Gordon was shoeless and shirtless and either asleep or passed out; and that it took Officer Weston multiple attempts to wake him. When he did wake up, Mr. Gordon was disoriented and had glassy red eyes and slurred speech.

5

There was no one else in the car, and, as the district court found, there was a "strong inference that the car had arrived as a result of the individual who was in the driver's seat" because Officer Weston had recently patrolled the area and did not see the car. JA 173. Taken together, these facts show Officer Weston had well more than a hunch; he had a particularized and objective basis for suspecting that Mr. Gordon had recently been driving while under the influence of impairing substances.

Mr. Gordon contends that Officer Weston did not have reasonable suspicion because all he "knew was that Mr. Gordon was asleep in his car, and that the car had a flat tire but was legally parked on a public street." Appellant's Opening Brief at 9. But this characterization fails to take the evidence in the light most favorable to the government, as is required at this point. *See Pulley*, 987 F.3d at 376. It also ignores the evidence that the car had other damage and that Mr. Gordon was disoriented and had slurred speech and glassy red eyes.

Mr. Gordon also contends that the district court erred by including in its analysis the odor of alcohol and Mr. Gordon's balance issues after he got out of the car. Appellant's Opening Brief at 13. But even without this evidence, the record supports the district court's conclusion that there was reasonable suspicion to believe Mr. Gordon had been driving while impaired.[2]

---

[2] As the government acknowledges, Mr. Gordon's difficulty in maintaining his balance occurred after the seizure and cannot be used post hoc to justify a seizure that occurred before Officer Weston observed the balance issues. The Court need not decide if it was error to consider the odor of alcohol, a fact which Officer Weston did not mention in his testimony but which was before the district court in the materials attached to the motion to suppress, as reasonable suspicion exists without considering that fact.

6

B

After Mr. Gordon was arrested, law enforcement officers seized his car and conducted an inventory search. During this search, they found a firearm in the rear seat pocket of the front passenger seat.

Inventory searches are "a well-established exception to the warrant requirement." *United States v. Brown*, 787 F.2d 929, 931 (4th Cir. 1986). "An inventory search of an automobile is lawful (1) where the circumstances reasonably justified seizure or impoundment, and (2) law enforcement conducts the inventory search according to routine and standard procedures designed to secure the vehicle or its contents." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017). "The government may demonstrate standardized criteria by reference to either written rules and regulations *or* testimony regarding standard practices." *United States v. Seay*, 944 F.3d 220, 223 (4th Cir. 2019) (cleaned up).

The decision to impound Mr. Gordon's car was reasonable under the circumstances. The car had a blown-out tire, it was very early in the morning, and there was no one immediately available to move the car and take custody of its contents. The Supreme Court has recognized it is reasonable for officers to impound a car to protect the government "against claims of theft, vandalism, or negligence." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987). Lieutenant Cliff also testified without contradiction that it was standard procedure to inventory a car after someone is arrested for driving while impaired so the government can protect any valuable items and maintain the chain of custody. JA 135, 138.

7

Mr. Gordon argues that impounding the car was unreasonable because the car "could have remained where it was until he returned." Appellant's Opening Brief at 20. Even so, that does not make impounding the car and the resulting inventory search unreasonable. *See Bertine*, 479 U.S. at 374 ("We conclude that . . . reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.").

Mr. Gordon also contends that the search did not comply with the written policy governing inventory searches, which only applies to vehicles "aboard Marine Corps installations." Appellant's Opening Brief at 21 (citing JA 61). The policy itself does not define "aboard," but Lieutenant Cliff testified that the policy has been applied in the past to cars parked in this area outside the gates. JA 153–54. This is a reasonable interpretation of the written policy, and the government may establish standardized criteria through "testimony regarding standard practices." *Seay*, 944 F.3d at 223 (cleaned up). Mr. Gordon does not argue that the officers failed to follow the policy or that they acted in bad faith.

Because we affirm on this basis, we decline to address the government's alternative argument that the officers would have eventually discovered the firearm under the plain view doctrine.

The judgment of the district court is

*AFFIRMED.*

8