**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-4843**

———————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

    versus

ROBERT EDWARD PATTERSON,

                                        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   Terrence W. Boyle, District Judge.  (CR-04-49)

———————

Submitted:  March 21, 2006          Decided:  March 31, 2006

———————

Before WILLIAMS, KING, and GREGORY, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Jeffrey B. Welty, Durham, North Carolina, for Appellant.  Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

After entering a conditional guilty plea to possession of a firearm by a prior felon, Robert Edward Patterson now appeals the district court's denial of his motions for an evidentiary hearing regarding an allegedly defective search warrant pursuant to Franks v. Delaware, 438 U.S. 154 (1978), and to suppress the firearms seized under the warrant. Because we conclude that, even after excising the challenged portions of the warrant, the warrant is supported by probable cause, we affirm.

## I.

On March 19, 2002, Agent Kelly H. Fields of the Harnett County Sheriff's Office filed a search warrant application for Patterson's residence in Broadway, North Carolina. In his warrant affidavit, Agent Fields attested that a reliable confidential informant observed a quantity of marijuana at Patterson's residence within the preceding seventy-two hours. Following the issuance of the warrant, the officers seized, among other things, several plastic bags containing pills, marijuana, and bullets from Patterson's residence. Ultimately, however, the charges arising from the drugs and associated paraphernalia were dismissed in North Carolina state court on September 3, 2002.

On November 7, 2003, Lieutenant John C. Holly of the Harnett County Drug Task Force prepared a second search warrant application

2

for Patterson's residence.  In the application, Lieutenant Holly

attested:

> Applicant has received more than a dozen complaints
> stating that suspect Robert Patterson is selling
> Marijuana from his home described in this application.
> A review of the suspect's criminal history indicates that
> Robert Patterson has had several drug related arrest[s]
> and charges in Harnett County in the past. Applicant has
> received information from numerous confidential sources
> that indicate suspect Patterson is involved in the
> illegal s[ale] and delivery of Marijuana. In addition to
> the above, applicant has been contacted by a confidential
> source of information, hereafter referred to as CSI,
> within 72 hours of the date and time of this application.
> The aforementioned CSI reported to applicant that they
> have known suspect Patterson for several years and that
> they have bought Marijuana from him in the past.  The
> aforementioned CSI participated in "controlled purchase"
> of Marijuana within 72 hours of the date and time of this
> application.

J.A. 55.  After the issuance of the warrant, the officers seized

six bags containing marijuana, pills, white powder residue, and

rolling paper from Patterson's residence.

On November 20, 2003, Agent Fields prepared a third search

warrant application, which is the subject of this appeal, for

Patterson's residence.  Agent Fields and two other federal agents

had visited Patterson's residence earlier in the evening to conduct

a search.  When Patterson refused to give consent, the federal

agents detained Patterson while Agent Fields prepared the warrant.

The third warrant application differed from the previous

applications in two significant respects.  First, the warrant

application sought permission to seize weapons present at

Patterson's residence.  Second, the warrant application referenced

3

the prior searches. Specifically, Agent Fields attested that the officers had conducted a search at Patterson's residence yielding controlled substances and drug paraphernalia at the first search, but erroneously recorded the date as March 19, <u>2003</u>, rather than March 19, <u>2002</u>. Agent Fields also described the second search at Patterson's residence, stating that he and Lieutenant Holly observed weapons and had seized controlled substances and drug paraphernalia.

With respect to the factual predicate for the instant search, Agent Fields asserted:

> ON 11/20/2003 THE HARNETT COUNTY SHERIFF'S OFFICE AND THE UNITED STATES DEPARTMENT OF JUSTICE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES ARRIVED AT ROBERT EDWARD PATTERSON['S] RESIDENCE [LOCATED] AT 407 YANKEE LANE BROADWAY, NC. WHEN AGENTS ARRIVED AT THE RESIDENCE AGENT FIELDS OBSERVED ROBERT EDWARD PATTERSON LOOK THROUGH THE GLASS STORM DOOR AND REMOVE[] AN UNKNOWN OBJECT FROM HIS FRONT POCKET OF HIS JACKET AND PLACE IT IN OR AROUND A CABINET WHEN THE AGENTS ARRIVED. AGENT FIELDS AND LT[.] HOLLY APPROACHED THE RESIDENCE AND A STRONG ODOR OF MARIJUANA WAS DETECTED COMING FROM INSIDE THE RESIDENCE. AGENT FIELDS CONDUCTED AN INTERVIEW WITH JEFFERY HAROLD CAMERON AND CHRISTOPHER JASON THOMAS [WHO] WERE INSIDE THE RESIDENCE WHEN AGENTS ARRIVED. MR[.] JEFFERY HAROLD CAMERON STATED THAT MARIJUANA HAD BEEN SMOKED INSIDE THE RESIDENCE PRIOR TO HIM ARRIVING AT THE RESIDENCE BUT WAS UNAWARE OF WHO WAS SMOKING THE MARIJUANA. A CONSENT SEARCH OF MR[.] CHRISTOPHER JASON THOMAS['S] VEHICLE REVEALED A PLASTIC BAG CONTAINING 7.5 GRAMS OF MARIJUANA.

J.A. 69. Upon the issuance of the third warrant, the officers seized several firearms and ammunition, a pill bottle containing eighty-one endocet pills, a marijuana blunt, a bag filled with marijuana, and rolling papers from Patterson's residence.

4

On February 18, 2004, Patterson was formally indicted by a grand jury for possession of a firearm as a prior felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924. Patterson subsequently filed a motion for a Franks hearing and motion to suppress the evidence obtained during the third (November 20, 2003) search. In his brief, Patterson asserted that Agent Fields knowingly proffered false and incomplete information in the third warrant application with respect to: (1) the date of the first (March 19, 2002) search; (2) the fact that the drug charges related to the first search had been dismissed; and (3) the officers' conversation with Cameron. Alternatively, Patterson argued that the third warrant was invalid because it referenced the second warrant, which, according to him, lacked probable cause. Patterson also contended that the third warrant was overly broad in authorizing the search and seizure of weapons. Finally, Patterson claimed that the warrants all stemmed from Lieutenant Holly's personal animus against him because Patterson had dated Lieutenant Holly's sister and attempted to hit Lieutenant Holly with a car (resulting in Lieutenant Holly's shooting at Patterson).

Patterson submitted the three executed warrants and an affidavit from his counsel in support of his motions. In his affidavit, counsel attested that he spoke with Cameron, one of the individuals identified in the third warrant, who apparently said that (1) Lieutenant Holly personally disliked Patterson because he

had dated Lieutenant Holly's sister; and (2) there was no smell of marijuana in the yard on November 20, 2003. According to counsel, Cameron further stated that when the officers approached Patterson's residence on November 20, 2003, they questioned him and Thomas separately. Cameron claimed that he denied smoking marijuana with Thomas and Patterson, and that he did not know whether anyone had been smoking marijuana prior to his arrival at Patterson's residence.

On May 7, 2004, the magistrate judge issued a detailed memorandum and recommendation ("M&R"), which advised that both motions be denied. First, the M&R found that Patterson failed to establish that the third warrant contained false statements or material omissions, or that any such statements or omissions were necessary to support the probable cause finding. Second, the M&R concluded that the remaining factual basis underlying the third warrant supported the probable cause determination. Finally, the M&R stated that the warrant was not overly broad with respect to authorizing the seizure of firearms.

Patterson timely filed objections to the M&R, essentially reiterating his original arguments. For the first time, however, Patterson submitted the formal affidavits of both Cameron and Thomas, who confirmed the representations made by Patterson's counsel in his affidavit.

On June 6, 2004, the district court denied the motions and adopted the M&R in its entirety. Subsequently, Patterson executed a conditional plea agreement to the firearm count in the indictment, reserving his right to appeal the district court's June 6, 2004 order. The district court accepted the plea. Patterson now appeals the denial of his pretrial motions.

## II.

### A.

On appeal, Patterson first attacks the veracity of the third warrant, asserting that he was entitled to a <u>Franks</u> hearing based on the warrant's allegedly false statements and material omissions. The district court found that (1) the erroneous date ascribed to the first search and omitted information regarding the dismissal of criminal charges arising from that search were innocent or otherwise negligent mistakes; (2) counsel's affidavit attesting to Cameron's recollection of the events was insufficient to rebut the facts related in the warrant affidavit; and (3) the remaining facts in the warrant affidavit, after excising the challenged portions, were nevertheless sufficient to support the probable cause determination. For these reasons, the district court denied Patterson's motion for a <u>Franks</u> hearing.

We review de novo the district court's probable cause determination under the Fourth Amendment. <u>United States v.</u>

7

Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Under Franks, a defendant may challenge a facially valid affidavit supporting a search warrant based on a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56. Because, however, there exists a "strong presumption of validity with respect to the affidavit supporting the search warrant," id. at 171, the Franks rule has "limited scope," id. at 167. Indeed, the defendant bears a heavy burden in showing the entitlement to a Franks hearing, because Franks requires the defendant to establish a subjective component, that the affiant intended to deceive the magistrate, and an objective component, that, without the falsified information, the warrant lacked probable cause.[1] Id. at 171-72;

---

[1]In Franks, the Supreme Court specifically detailed the evidentiary requirements necessary to obtain an evidentiary hearing on a warrant affidavit's integrity:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless

8

<u>United States v. Jeffus</u>, 22 F.3d 554, 558 (4th Cir. 1994) ("With the defendant's burden in attacking a search authorized by a facially valid warrant so heavy, so too is his burden in establishing the need for a hearing on the issue."); <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990) (the defendant must satisfy both the subjective and objective components of the <u>Franks</u> rule to be entitled to a hearing).

Based on these principles, we agree with the district court that Patterson has failed to establish that Agent Fields intentionally or recklessly proffered false or incomplete information in his warrant affidavit. With respect to the identified errors related to the first search, Patterson has, at best, shown that Agent Fields committed innocent or negligent errors in ascribing the wrong year to the first search and failing to mention the dismissal of the criminal charges arising from that search. <u>Franks</u>, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient."). There simply is not enough for us to infer bad motive from the fact of these errors alone.

---

> disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

<u>Franks</u>, 438 U.S. at 171-72.

See Colkley, 899 F.2d at 301 ("Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." (emphasis in original and internal citations omitted)); id. (finding that the agent's failure to include photospread information in the search warrant application fell "far short of the level of flagrant police action Franks is designed to prevent . . .").

With respect to the alleged falsification of the agents' conversation with Cameron, we conclude that Patterson has failed to proffer competent evidence showing that the recorded statements were even false. Franks makes clear that conclusory allegations of unlawful official misconduct are insufficient; rather, "[a]ffidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id. at 171. Although counsel purported to supply the evidentiary basis for this claim, counsel's affidavit was without personal knowledge of the events transpiring at the third search and bereft of probative evidence other than hearsay statements. Significantly, Patterson never gave any explanation to the magistrate court or the district court as to why he could not obtain an affidavit from Cameron on his motion for a Franks hearing.[2] Thus, in the absence of competent evidence in support of

---

[2]Although Patterson eventually submitted individual affidavits from Cameron and Thomas before the district court, he again offered no explanation for why he could not have presented them earlier.

10

this claim, we cannot conclude that Patterson met his heavy burden under <u>Franks</u>. Accordingly, we find that Patterson did not satisfy <u>Franks</u>'s subjective requirement with regard to any of the challenged portions of the warrant affidavit.

We further agree with the district court that, after setting aside the alleged false statements and adding the disposition of the criminal charges related to the first search, the warrant affidavit still contained information that amply supported the probable cause determination. <u>See</u> <u>Franks</u>, 438 U.S. at 171-72 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable

---

For the first time on appeal, Patterson asserts that Cameron lived over an hour from counsel's office, to the extent that only a telephone interview was feasible at the time the motion was filed. Patterson still has not explained why he was unable to procure Thomas's affidavit.

We thus perceive no abuse of discretion in the district court's implicit decision to disregard the affidavits newly submitted by Cameron and Thomas in adopting the M&R, particularly since Patterson did not explain the absence of these affidavits to the district court. <u>See</u> <u>Doe v. Chao</u>, 306 F.3d 170, 193 (4th Cir. 2002) (finding no abuse of discretion where the district court refused to accept claimants' supplemental affidavits on damages issue after the magistrate judge's recommendation, where the claimants took the calculated risk of an evidentiary insufficiency by refusing to submit damages evidence before the magistrate judge); <u>see also</u> 28 U.S.C. § 636 (b)(1) (the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," but "<u>may</u> also receive further evidence" (emphasis added)). The oversight is particularly disturbing because <u>Franks</u> specifically put Patterson on notice of the heavy evidentiary burden he faced in requesting the hearing. <u>See</u> <u>infra</u>, note 1.

cause, no hearing is required."). Probable cause generally exists "'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)); Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983) (probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). According to the warrant affidavit, the agents detected a strong odor of marijuana emanating from Patterson's residence. Upon their arrival, Patterson peered through the storm door, removed an unknown object from his jacket, and placed it in the cabinet. After conducting separate field interviews with Cameron and Thomas, who had voluntarily stepped outside Patterson's residence, the agents conducted a consensual search of Thomas's vehicle, which contained a small amount of marijuana. In light of the fact that Patterson never submitted an affidavit challenging these facts or his detention, we conclude that the above-recited facts support the probable cause determination underlying the third warrant.[3]

Accordingly, we conclude that Patterson has failed to establish either the subjective or objective requirements of

---

[3]In addition, we note that because the officers had probable cause to search for marijuana in Patterson's residence, the firearms were subject to inevitable discovery.

12

Franks.  For these reasons, we affirm the denial of Patterson's motion for a Franks hearing.

B.

Patterson next appeals the district court's denial of his motion to suppress evidence seized pursuant to the third warrant. Specifically, Patterson asserts that the third warrant is invalid because it referenced the second warrant, which, according to him, was issued without probable cause.  He therefore claims that any evidence seized under the third warrant must be suppressed as fruit of the poisonous tree.  The district court denied the motion to suppress after concluding that the second warrant was issued with probable cause and that, therefore, the second warrant did not taint the third warrant.

In examining the district court's denial of Patterson's motion to suppress, we "review [] questions of law de novo and findings of [historical] fact and reasonable inferences drawn from those findings for clear error."  United States v. Holmes, 376 F.3d 270, 273 (4th Cir. 2004) (alterations in original and internal quotation marks and citations omitted); United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).  Because the district court denied the motion, we construe the evidence in the light most favorable to the Government.  Perkins, 363 F.3d at 320.

13

Although we conclude that the denial of the motion to suppress was appropriate, we need not reach the validity of the second warrant.[4]  It is generally accepted that "the inclusion of certain illegally obtained information in the application for a search warrant does not require suppression of the evidence seized under the warrant ('fruit of the poisonous tree') if, excluding the illegally obtained information, probable cause for the issuance of the warrant could still be found."  United States v. Apple, 915 F.2d 899, 910 (4th Cir. 1990); United States v. Whitehorn, 813 F.2d 646, 649 (4th Cir. 1987) (search warrant's references to unlawful bomb sweep and Uzi submachine gun discovered during a previous search did not render the warrant invalid where it was otherwise supported by probable cause).  As discussed above, the warrant affidavit supporting the third warrant attested that the agents detected a strong odor of marijuana coming from inside Patterson's residence, Patterson placed an unknown object in the cabinet upon their arrival, and a consensual search of Thomas's vehicle revealed a small amount of marijuana.  Thus, even after excising the references to the second warrant, we nevertheless find probable cause in the remaining facts contained in the third warrant.

---

[4]Indeed, although certain portions of the warrant affidavit supporting the second warrant could have been ripe for cross-examination, Patterson did not submit an affidavit contesting those facts.

14

Accordingly, we affirm the denial of Patterson's motion to suppress the evidence seized pursuant to the third warrant.

III.

The district court's denial of Patterson's motion for a <u>Franks</u> hearing and motion to suppress the contents of the third search is therefore affirmed.

<u>AFFIRMED</u>