**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4366

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMES WILLIAM THOMAS, III,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Arenda L. Wright Allen, District Judge.  (2:18-cr-00058-AWA-LRL-1)

Submitted:  October 17, 2022                    Decided:  July 6, 2023

Before HARRIS and RUSHING, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  James R. Theuer. JAMES R. THEUER, PLLC, Norfolk, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Joseph Attias, Assistant United States Attorney, Richmond, Virginia, Joseph Kosky, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James William Thomas, III, was convicted of eleven counts of production and possession of child pornography. At trial, the government relied on images and other materials found on a hard drive, flash drive, and computer taken from Thomas's home during the execution of search warrants based on unrelated burglaries. Thomas moved to suppress the evidence from these devices on multiple grounds. The district court denied his suppression motions, and Thomas now appeals that denial. For the reasons that follow, we affirm.

## I.

### A.

In February 2014, Robert Clarke reported a burglary of his residence in Southampton County, Virginia. Clarke sent the detective investigating the burglary, Camden Cobb, an inventory of stolen items, including tools and electronic storage devices. He also reported that he thought an individual – later identified as defendant James William Thomas, III – who frequently drove by his house in a suspicious manner might be responsible. Cobb believed that the Clarke burglary might be related to two other recent nearby burglaries with a similar modus operandi: All three involved theft of small household items in addition to more typically stolen items, like electronics, cash, and firearms.

Then, in April 2014, Thomas was arrested in nearby Franklin, Virginia, on the roof of a building attempting to rob the businesses within. At that time, police seized from

2

Thomas's vehicle tools that were stolen during the burglary of Clarke's home; one was labeled with Clarke's name, and others were verified as Clarke's through serial numbers.

At that point, Cobb sought a search warrant for Thomas's trailer. In his affidavit, he based probable cause on the proceeds of the Clarke burglary found in Thomas's vehicle. A magistrate issued the warrant, authorizing seizure of a long list of types of items – including televisions and "other electronic devices," J.A. 203 – intended to match the items known to be stolen from Clarke's residence as well as items from the other burglaries Cobb was investigating.

Cobb and other officers executed the warrant starting on Monday, April 28, 2014.[1] Once inside the trailer, they quickly realized that they "were going to have a lot more on [their] hands than one or two or three burglaries." J.A. 302. After investigating the scene and linking items to numerous burglary reports in other jurisdictions, they were able to determine that "[e]verything that appeared to be of a newer, nicer . . . quality . . . more likely than not . . . [was] going to be identified as belonging to somebody else at some point." J.A. 321–22. As a result, officers seized myriad items ranging from the trailer's refrigerator and the pickup truck parked in the yard to household items like clothing, pills, and a garbage can. They also seized more than ten electronic devices, including the three

---

[1] The initial search went from Monday to Wednesday. On Thursday, Cobb obtained a second search warrant for Thomas's trailer, nearly identical to the first but with an updated probable cause statement to reflect what law enforcement had already found in the trailer.

3

at the heart of this appeal: an Iomega hard drive, a Transcend flash drive, and an HP computer.

The owners of some of the seized electronic devices could be identified by name tags on the devices or through service tags and serial numbers. To identify the rest of the devices, Cobb accessed their contents, and in some cases succeeded in using stored videos or images to match devices with burglary reports and owners. But when Cobb accessed the Iomega hard drive at issue here, he found what he understood to be professionally produced child pornography. He moved immediately to different files, still seeking clues to ownership, and those files contained names and images of minor girls.

At that point, Cobb contacted the FBI, and Special Agent Jack Moughan instructed him not to access the devices again. Moughan took control of the Iomega hard drive, Transcend flash drive, and HP computer and secured a federal warrant for their search, with Cobb's "actual inspection of the evidence" providing probable cause. J.A. 68. On the three devices, Moughan discovered thousands of images of child pornography and significant evidence of Thomas's exploitation of minors over the course of multiple years.

**B.**

Thomas was charged with eleven counts of producing and possessing child pornography. The first eight counts charged him with producing and transmitting child pornography on the Iomega hard drive, in violation of 18 U.S.C. § 2251(a). The remaining three counts charged him with possessing child pornography on the Iomega hard drive, the Transcend flash drive, and the HP computer, in violation of 18 U.S.C. § 2252A(a)(5)(B).

4

Thomas moved to suppress the evidence from the devices. He challenged three distinct phases of the investigation leading to the discovery of the materials on the devices: First, he argued that the warrants to search his home were overbroad; second, that the seizure of the three devices was outside the scope of the warrants; and third, that Cobb's initial search of the devices to ascertain ownership was unconstitutional. According to Thomas, all the evidence from the three devices was traceable to and tainted by these violations and should be suppressed.

The government opposed Thomas's motion, rebutting each of his arguments. It also argued that Thomas lacked standing to contest the searches of the three devices because he could not demonstrate lawful ownership. A magistrate judge then granted Thomas's counsel's motion to withdraw and appointed new counsel, who filed a supplemental brief substantively the same as the first. The government again responded, noting that Thomas had not addressed the issue of standing or attempted to demonstrate lawful possession.

After holding a hearing, the magistrate judge recommended denial of the suppression motion. The magistrate first concluded that the warrants for Thomas's trailer were supported by probable cause and sufficiently particularized. And even if the warrant had been deficient, the magistrate reasoned, *Leon*'s good-faith exception to the exclusionary rule would apply. *See United States v. Leon*, 468 U.S. 897 (1984). Next, the magistrate deemed the seizure of the electronic devices within the warrant's scope because they fell within the listed category of "televisions and other electronic devices," J.A. 485–86, and because it was appropriate to seize the electronics after Cobb concluded so many other items in the trailer appeared to be stolen.

5

Finally, the magistrate judge found that Cobb's search of the devices to determine ownership was lawful and, in the alternative, that Thomas lacked standing to challenge the search. Thomas, the magistrate concluded, had failed to meet his burden of showing that he had a lawful interest in the three devices, as required to give rise to a reasonable expectation of privacy. The magistrate emphasized that the government had raised the issue of Fourth Amendment standing in its response to Thomas's suppression motion, and that Thomas still had not offered any ownership evidence.

After the magistrate issued its report, Thomas's second lawyer moved to withdraw, and the district court granted the motion. Thomas filed his objections to the magistrate's report pro se. The district court overruled his objections and adopted the magistrate's report. A few months later, Thomas filed three more motions to suppress, which the district court denied on essentially the same grounds. The district court also denied Thomas's request for another evidentiary hearing.

Thomas proceeded to trial and was convicted by a jury of all 11 counts against him. The district court sentenced him to an aggregate term of 480 months' incarceration. Thomas timely filed this appeal challenging the district court's decision on his suppression motions.

## II.

"We review a district court's denial of a motion to suppress by considering conclusions of law de novo and underlying factual findings for clear error." *United States v. Rose*, 3 F.4th 722, 727 (4th Cir. 2021) (internal quotation marks omitted). When the

6

district court has denied a motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013). In this case, Thomas's arguments on appeal, as before the district court, correspond roughly to three phases of the investigation that led to his prosecution and conviction: the issuance of the search warrants for his home, the execution of the warrants, and Cobb's search of the devices once they had been seized from Thomas's residence. We address each in turn.

**A.**

We begin with Thomas's challenges to the warrants used to search his residence in the first instance. Warrants must be based on probable cause and "particularly describe the place to be searched, and the persons or things to be seized." *United States v. Blakeney*, 949 F.3d 851, 861 (4th Cir. 2020) (alteration omitted) (quoting U.S. CONST. amend. IV). Thomas argues that the warrants here (identical in all relevant respects) failed on both these fronts.

First, Thomas contends that the warrants were unsupported by probable cause because Cobb's affidavit provided no basis for concluding that evidence from a burglary was likely to be found in his residence. In evaluating probable cause, we apply "a deferential and pragmatic standard to determine whether the judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (internal quotation marks omitted). That standard is satisfied here.

Thomas does not meaningfully dispute – nor could he – that after police arrested him while breaking into a business and found items traced to the Clarke burglary in his car,

7

there was probable cause linking him to at least two burglaries. Instead, Thomas insists that there was no reason to think the additional and still missing proceeds of the Clarke burglary, or proceeds of any other burglary, might be found in his residence. But the "normal inference" here, as both the district court and magistrate judge concluded, is that at least some of the missing Clarke items indeed would be in Thomas's home, located near Clarke's residence. *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (explaining that required nexus between place to be searched and items to be seized "may be established by the nature of the item and the normal inferences of where one would likely keep such evidence"); *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002) (concluding that the presence of the defendants' residences near the crime scene supported the inference that evidence would be in their residences). No more direct link between Thomas's home and the stolen items is required. *United States v. Jones*, 942 F.3d 634, 639 (4th Cir. 2019) ("[W]e long have held that an affidavit need not directly link the evidence sought with the place to be searched.").

Thomas also argues that the initial warrant did not describe the items to be seized with sufficient particularity. We disagree. As noted above, the warrant authorized the seizure of a long and detailed list of items, matched to those stolen from Clarke and the victims of the other burglaries Cobb was investigating:

> [a]ny and all items and evidence related to the crime of Larceny and Burglary, to include but not limited to cash, televisions, and other electronic devices, power tools, outdoor equipment, chainsaw's [sic], firearms, bows, binoculars, rods and reels, game cameras, various types of hunting equipment and sporting goods, camouflage clothing and household goods and any and all similar items.

8

J.A. 202.  With respect to the listed categories, we agree with the magistrate judge that the warrant provided a "readily ascertainable guideline[]" for the executing officers.  J.A. 479 (internal quotation marks omitted).  Although Thomas argues that the warrant should have provided more precise descriptions, we think it falls well within the "practical margin of flexibility" permitted to the drafters of warrants.  *See United States v. Cobb*, 970 F.3d 319, 327 (4th Cir. 2020) (quoting *United States v. Jacob*, 657 F.2d 49, 52 (4th Cir. 1981)).  We recognize that the listed categories were not exclusive, as the warrant allowed for the seizure of "all items and evidence related to the crime of [l]arceny and [b]urglary," including but not limited to the enumerated items.  J.A. 202.  But that provision itself was narrowed by the reference to specific crimes.  *See United States v. Sueiro*, No. 21-4413, slip op. at 8 (4th Cir. Feb. 3, 2023) ("[W]hen a warrant states a charged offense, such reference to the crime effectively narrows the description of the items to be seized."); *see also Blakeney*, 949 F.3d at 863 n.2.  As the magistrate judge explained and the district court agreed, the warrant as a whole – which "in addition to identifying the type of crime being investigated . . . also identified the specific types of items" sought – sufficiently guided and constrained the discretion of the searching officers.  J.A. 479.[2]

---

[2] Given this disposition, we need not address the "good-faith" exception to the exclusionary rule.  *See Leon*, 468 U.S. 897.  But we note that we see no error in the magistrate judge's alternative finding that even if this warrant had in some way been deficient, the officer's reasonable reliance on the warrant would render inapplicable the exclusionary remedy sought by Thomas.

**B.**

We turn next to Thomas's arguments regarding the execution of the warrants at his home. Thomas's primary contention here is that the officers impermissibly seized the critical Iomega hard drive, Transcend flash drive, and HP computer because those items fell outside the scope of the warrant. Again, we disagree.

First, as the magistrate judge and district court concluded, those items in fact fell squarely within the warrant's listed category of "televisions and other electronic devices." Moreover, because Cobb knew that SD cards, a type of electronic storage device, had been stolen from Clarke's residence and that other electronic devices were stolen in other burglaries, his reliance on the plain terms of the warrant was entirely reasonable. *See United States v. Kimble*, 855 F.3d 604, 612 (4th Cir. 2017) ("[I]tems seized pursuant to a validly issued warrant are not required, on their face, to necessarily constitute evidence of an offense identified in the relevant warrant – rather, they only potentially have to be evidence of such offense." (cleaned up)).

And in any event, as the government argues, under the circumstances here, the electronic devices would have been within the scope of the warrant even had they not qualified under the "electronic devices" category. "[L]aw enforcement officers may seize an item pursuant to a warrant even if the warrant does not expressly mention and painstakingly describe it." *United States v. Phillips*, 588 F.3d 218, 225 (4th Cir. 2009). Again, the officers here knew that electronic devices were among the items stolen in the burglaries they were investigating. And by the time they seized the devices in question, they also had determined that Thomas's illegal activities were so widespread that virtually

10

every new or higher-quality item in the residence was likely stolen. At that point, it was entirely reasonable for the officers to conclude that the devices in question were at least "potentially" proceeds or evidence of burglary. *Kimble*, 855 F.3d at 612; *see Anglin v. Director, Patuxent Inst.*, 439 F.2d 1342 (4th Cir. 1971) (holding, under very similar circumstances, that officers searching trailer for 27 stolen goods were entitled under warrant to seize additional stolen items uncovered in the process of the lawful search).

Thomas also argues that law enforcement officers violated the Fourth Amendment when they asked burglary victims to come to Thomas's residence to help identify stolen property. But as the Supreme Court has explained, "[w]here the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property" is consistent with the Fourth Amendment. *Wilson v. Layne*, 526 U.S. 603, 611–12 (1999). Moreover, as the government notes, Thomas does not argue that any of these individuals identified the electronic devices at issue on appeal, and even if the officers had "exceeded the scope of the warrant" by inviting third parties into the residence, "only the improperly seized evidence" would be suppressed; "the properly seized evidence remains admissible." *United States v. Srivastava*, 540 F.3d 277, 293 (4th Cir. 2008) (cleaned up).

## C.

We turn finally to the stage of the proceedings most directly tied to Thomas's prosecution and conviction: the initial search of the Iomega hard drive, conducted by Cobb to ascertain the device's ownership. The government argues that Thomas failed to establish

11

a reasonable expectation of privacy in any of the three electronic devices on which evidence was discovered, and so cannot challenge their search. [3] We agree.

A defendant may challenge a search only if he has an individualized and objectively reasonable expectation of privacy in the item searched. *Rose*, 3 F.4th at 727; *United States v. Castellanos*, 716 F.3d 828, 832 & n.3 (4th Cir. 2013). This requirement is sometimes referred to as "standing" to challenge a search, though it is not jurisdictional. *United States v. Ferebee*, 957 F.3d 406, 412 (4th Cir. 2020). Critically, the defendant bears the burden of showing a reasonable expectation of privacy in the relevant property. *Rose*, 3 F.4th at 727.

For Thomas, this meant that he was required to show lawful ownership of the electronic devices at issue. If those devices were stolen, then Thomas could not establish a reasonable expectation of privacy: "No matter the degree of possession and control," a "thief would not have a reasonable expectation of privacy" in a stolen item. *Byrd v. United States*, 138 S. Ct. 1518, 1529 (2018); *see also Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978). And where the government provides a basis for believing the property in question is stolen, we require that the defendant show the opposite: that the property in fact belongs to him. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981); *United States v.*

---

[3] Cobb also performed a preliminary search of the Transcend flash drive to determine ownership, and it appears that he found images on that device as well. Because that search rises or falls with the search of the Iomega hard drive, on which the first evidence of child pornography was discovered, we need not address the devices separately. The HP computer in question was not searched by Cobb before it was turned over to the FBI.

*Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981) (explaining that because the burden to establish standing is on the defendant, evidence that a searched car was stolen required the defendant "to show, if he could, that he acquired the car innocently").

Thomas failed to make that showing here. The government raised the issue of standing from the outset, arguing in opposition to Thomas's first suppression motion that because his "residence was literally full of . . . stolen merchandise," his ownership of the electronic devices was in serious doubt, requiring Thomas to come forward with evidence of ownership. J.A. 99–100. But as the magistrate judge observed, Thomas did not even attempt to make such a showing in his reply brief or during the evidentiary hearing, and he thus failed to meet his burden on standing.[4]

Thomas then attempted to litigate standing for the first time before the district court, submitting a declaration purporting to establish lawful ownership and requesting a second evidentiary hearing. Whether to consider new evidence never presented to the magistrate judge is a question "within the sound discretion of the district court," *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002), and here, the district court declined to take up the new declaration – which did not include any explanation for its lateness – or to hold another

---

[4] Thomas did argue at the evidentiary hearing that testifying as to ownership of the electronic devices for standing purposes would force him to potentially incriminate himself as to the underlying child pornography charges, in violation of his Fifth Amendment rights. But the Supreme Court squarely addressed this ostensible dilemma in *Simmons v. United States*, 390 U.S. 377, 394 (1968), holding that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Accordingly, the magistrate judge appropriately rejected this argument, and the district court appropriately adopted that conclusion.

13

evidentiary hearing.  We discern no abuse of discretion in that determination.  *See United States v. Patterson*, 173 F. App'x 283, 288–89 & n.2 (4th Cir. 2006) (finding no reversible error in district court's disregard of affidavits submitted only after magistrate judge's report, "particularly since [the defendant] did not explain the absence of these affidavits to the district court").  Given "the voluminous record, the sound rulings already made, and the full evidentiary hearing held previously" by the magistrate judge, the district court was entitled to adopt the magistrate's recommendation as to Thomas's failure to meet his burden on standing without reopening the record.  J.A. 901.[5]

## III.

For the reasons given above, the judgment of the district court is affirmed.

*AFFIRMED*

---

[5] Because we affirm the district court's conclusion that Thomas lacked standing, we need not address the parties' arguments as to the reasonableness of Cobb's search under the Fourth Amendment or the application of the exclusionary rule to any improperly obtained evidence.

14